**The PEOPLE of the State of Colorado,
Plaintiff–Appellant,**

v.

**Douglas Alan GLASER, Defendant–Appellee.**

**No. 08CA0411.**

Colorado Court of Appeals,
Div. III.

Jan. 21, 2010.

Mitchell R. Morrissey, District Attorney, Robert J. Whitley, Chief Appellate Deputy District Attorney, Ilene P. Buchalter, Deputy District Attorney, Denver, Colorado, for Plaintiff–Appellant

Thomas J. Hammond, P.C., Thomas J. Hammond, Denver, Colorado; Michael J. Heher, Corvallis, Oregon, for Defendant–Appellee

Opinion by Judge MILLER.

The prosecution appeals the trial court's order dismissing forty-two felony charges filed against defendant, Douglas Alan Glaser. The court determined that defendant's federal and state constitutional rights to a speedy trial had been violated. We reverse and remand for reinstatement of the charges.

As the trial court aptly observed, the procedural history of this case is extraordinarily "tortured and star-crossed." Among other things, eight rescheduled trial dates, two mistrials, three replacements of defense counsel (including one because of a suicide and another because of a mental breakdown mid-trial), one interlocutory appeal by the prosecution, and two petitions to the supreme court by defendant preceded entry of the dismissal order. Approximately one year later, the United States Supreme Court issued an opinion changing the landscape of constitutional speedy trial challenges in a manner material to this case.

We begin by summarizing the relevant principles of law that must be kept in mind when navigating that procedural history (set forth below in section II).

### I. Applicable Law

#### A. Constitutional Speedy Trial Rights

Both the Sixth Amendment and article II, section 16 of the Colorado Constitution guarantee an accused the right to a speedy trial. *People v. Small*, 631 P.2d 148, 154 (Colo.1981). Under both provisions, the right to a speedy trial attaches with the filing of a formal charge or with a defendant's arrest. *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *People v. Chavez*, 779 P.2d 375, 376 (Colo. 1989); *People v. Melanson*, 937 P.2d 826, 831 (Colo.App.1996). "[T]he defendant has the burden of proving that his constitutional speedy trial right has been denied." *Small*, 631 P.2d at 154.

The determination of such a claim is measured by an ad hoc balancing of four factors: the length of the delay, the reasons for the delay, the defendant's assertion or demand for a speedy trial, and prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Small*, 631 P.2d at 154; *see also Chavez*, 779 P.2d at 376 (the *Barker* test also governs the determination of a speedy trial claim made under article II, section 16 of the Colorado Constitution). "None of those four factors is indispensable to a finding that speedy trial has been denied. Nor is any one of them [i]pso facto sufficient to require such a finding. Rather all are interrelated and must be considered together with any other relevant circumstances." *Gelfand v. People*, 196 Colo. 487, 489–90, 586 P.2d 1331, 1332 (1978).

Although these factors must be considered in combination, the length of the delay must be at least presumptively prejudicial before further inquiry into the other factors is warranted. *Moody v. Corsentino*, 843 P.2d 1355, 1363–64 (Colo.1993). There is no established time period that automatically constitutes undue delay. *Id.* at 1364. But in *Doggett v. United States*, 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), the Supreme Court noted that, depending on the nature of the charges, generally lower courts have found post-accusation delay to be "presumptively prejudicial" as it approaches one year.

Here, the trial court issued a thoughtful thirty-four-page decision applying the foregoing principles without the benefit of the United States Supreme Court's subsequent decision in *Vermont v. Brillon*, —— U.S. ——, 129 S.Ct. 1283, 1291, 173 L.Ed.2d 231 (2009). In *Brillon*, the Court held that, for purposes of constitutional speedy trial analysis, delay caused by a defendant's counsel is attributable to the defendant under the second *Barker* factor, irrespective of whether counsel is publicly assigned. *See also Lopez v. People*, 113 P.3d 713, 716 (Colo.2005) (a decision of the United States Supreme Court is to be applied in cases that are pending on direct appeal when the opinion is announced). This development is important because, as detailed below in section II, much of the

delay in this case occurred when defendant's first two court-appointed attorneys became unavailable due to death and serious mental illness, respectively, and, in its order of dismissal, the trial court attributed these periods of delay to the state because both attorneys were paid for by the state.

## B. Standard of Review

■ An appellate court will not disturb the factual findings underlying a trial court's constitutional speedy trial determination if the findings are supported by the record. *Chavez*, 779 P.2d at 378. However, a trial court's application of the four *Barker* factors is subject to de novo review. *See, e.g., United States v. Molina–Solorio*, 577 F.3d 300, 304 (5th Cir.2009) (the appropriate standard of review of the district court's application of the *Barker* factors is de novo, citing decisions from other circuits); *People v. Slender Wrap, Inc.*, 36 Colo.App. 11, 19, 536 P.2d 850, 855 (1975) (implicitly utilizing de novo review to reverse a trial court's determination that the defendant's constitutional speedy trial rights had been violated); *see also People v. Matheny*, 46 P.3d 453, 462 (Colo.2002) ("the application of the controlling legal standard to the facts established by the evidence and found by the trial court is a matter for de novo appellate review, at least where constitutional rights are concerned").

## C. Statutory Speedy Trial Right

As noted above, the trial court based its order of dismissal exclusively on constitutional grounds. However, when conducting its *Barker* analysis and determining responsibility for a period of delay occasioned by the first substitution of counsel, the court made a finding that it had committed statutory speedy trial error by not determining whether new counsel might be located who could be prepared for trial before the existing speedy trial deadline expired (as explained in greater detail in section III). Further, many of the court's scheduling decisions were driven by its concern for the statutory speedy trial deadline. Therefore, reviewing the relevant statutory speedy trial provisions will establish a context for better understanding the procedural history.

As a general rule, a defendant must be brought to trial within six months after arraignment. § 18–1–405(1), C.R.S.2009. However, any period of delay "caused at the instance of the defendant" shall be excluded from the six-month speedy trial period. § 18–1–405(6)(f), C.R.S.2009. Further, if a substitution of defense counsel necessitates the rescheduling of a trial date, the statutory six-month period begins anew from the date that the continuance is granted. § 18–1–405(3), C.R.S.2009; *see People v. Wilson*, 972 P.2d 701, 705 (Colo.App.1998).

■ Of particular significance to the present controversy, the supreme court has explained that, when a period of delay is attributable to the substitution of a defendant's counsel, a special inquiry is required:

> When a trial court is required to substitute defense counsel, the defendant's right to effective assistance of counsel may be jeopardized by the strict adherence to the statutory speedy trial right because the substitute counsel has inadequate time to prepare. Under such circumstances, we have held that charging a continuance of the trial date to the defendant is appropriate if continuing the trial date is necessary to allow new counsel to prepare for trial. In order to reach such a conclusion, however, the record must support the trial court's conclusion that the delay in derogation of the defendant's statutory right to a speedy trial was necessary to protect his constitutional right to effective assistance of counsel.

*People ex rel. Gallagher v. Dist. Court*, 933 P.2d 583, 588–89 (Colo.1997) (citations omitted).

## II. Procedural History

Because of the highly fact-intensive nature of a constitutional speedy trial inquiry, we provide a detailed summary of the proceedings that led to the trial court's dismissal of the charges.

## A. Initial Charges and Arrest

On February 20, 2005, defendant was driving a car when he was involved and injured in an accident. According to the investigat-

ing officer, defendant identified himself as "Michael Douglas Glaser" and presented a passport issued in that name, which the officer did not retain. After defendant left for the hospital by ambulance, the officer quickly learned defendant's real name, determined that his driver's license had been revoked, and obtained a warrant to search his home and car for evidence relating to the fraudulent passport. Although the search did not result in the recovery of the passport, the officers seized many other items, including two other passports (one issued in the name of Douglas Michael Glausen, and one issued in the name of Douglas Alan Glaser), two birth certificates with names corresponding to those on the two seized passports, a gun, several credit cards issued in the name of Douglas Glausen, and some prescription pharmaceutical containers with labels indicating that the prescriptions had been issued to Douglas Glausen.

Defendant was arrested on the same day as the accident and the search, February 20, 2005. The next day, he posted a $2,000 bond and was released from custody.

On February 24, 2005, police officers obtained a second warrant authorizing a search of defendant's office for evidence of securities fraud.

On March 2, 2005, the prosecution filed an eight-count complaint charging defendant with forgery, possession of a forged instrument, two counts of criminal impersonation, criminal possession of a financial transaction device, obtaining a controlled substance by fraud or deceit, obtaining a controlled substance by false representations, and possession of a weapon by a previous offender (POWPO).

### B. Indictment and Second Arrest

Defendant was still free on bond when, on August 31, 2005, the prosecution filed a forty-three-count grand jury indictment charging him with (1) the crimes initially charged in the March complaint (except that the charge of obtaining a controlled substance by false representations was not refiled); and (2) numerous additional counts of securities fraud and related counts of theft, forgery, conspiracy, criminal impersonation, and violation of the Colorado Organized Crime Control Act.

According to the indictment, the securities fraud counts and related charges all stemmed from a complex scheme in which defendant and others victimized investors by withholding material information which, if revealed, would have disclosed the deceitful nature of their enterprise.

On September 1, 2005, defendant was arrested on the grand jury indictment. The judge supervising the grand jury had previously set bail at $750,000 with a requirement that any bond include a condition requiring defendant to surrender the passport issued in the name "Michael Douglas Glaser" that he allegedly had presented after the car accident. Defendant was unable to post bond and remained in custody when, on September 12, 2005, his privately retained counsel (retained counsel) unsuccessfully sought a reduction in the amount of the bond.

On September 26, 2005, defendant posted a surety bond in the amount of $750,000. The next day, he filed a motion challenging the constitutionality of the self-incriminatory bond condition requiring him to surrender the passport issued in the name "Michael Douglas Glaser." Although it is not entirely clear from the record, it appears that defendant was briefly released on bond and then taken back into custody after it was discovered that he had not complied with the passport-surrender condition.

At a hearing on September 29, 2005, the court ruled that the passport-surrender condition was constitutionally valid. On that same date, the court granted the prosecution's motion to dismiss the original eight-count complaint that had been filed in March.

On October 5, 2005, defendant filed a motion asking the court to review the grand jury's probable cause determination. That same day, the surety for defendant's bond petitioned the court for exoneration because (1) defendant remained in custody and had not produced the passport; and (2) the check he had written to pay the bond premium had been returned for insufficient funds.

On October 14, 2005, the court granted the surety's request for exoneration on the bond.

In that same order, the court issued an injunction prohibiting defendant from liquidating funds pending an investigation of the surety's complaint that defendant had committed fraud when contracting for bond services.

On October 20, 2005, defendant filed a renewed motion for bond reduction and removal of the passport-surrender condition.

On November 2, 2005, defendant filed a C.A.R. 21 petition for extraordinary relief in the supreme court challenging the constitutionality of the passport-surrender condition. The supreme court denied the petition on November 14, 2005.

On November 3, 2005, the trial court found that the record supported the grand jury's finding of probable cause with respect to all forty-three charges in the indictment.

On December 13, 2005, defendant was arraigned and pleaded not guilty (thus establishing the statutory speedy trial deadline as June 13, 2006). The court scheduled a motions hearing for March 21, 2006, and a trial on all charges for May 3, 2006. At that same hearing, the court denied defendant's motion for bond reduction or modification.

On January 31, 2006, retained counsel filed several pretrial motions on defendant's behalf, including, as relevant here, (1) a motion for discovery of the grand jury materials; (2) two motions for relief from prejudicial joinder asking that the court trifurcate the charges to alleviate unfair prejudice; (3) a motion to dismiss the four forgery charges because the alleged conduct did not meet the statutory definition of the offense; and (4) a motion to transfer the charge of obtaining a controlled substance by fraud to the county where the prescription allegedly had been filled.

## C. Withdrawal of Retained Counsel

The first event giving rise to change of defense counsel occurred on March 6, 2006, when retained counsel filed a motion to withdraw and an accompanying notice to defendant. As grounds, he identified "irreconcilable differences in the attorney-client relationship created by non-adherence to the fee agreement between counsel and client, and an inability to communicate caused by the client."

On March 14, 2006, the prosecutor informed the court that a witness would not be available for the March 21, 2006 motions hearing. Pursuant to the parties' agreement, the court rescheduled that hearing for April 18, 2006.

Defendant appeared at the rescheduled hearing with retained counsel on April 18, 2006. The prosecution conceded the severance motions, and the court ordered that defendant would have three separate trials: one on the securities fraud charges; a second on the various charges relating to assumption of a fictitious identity to obtain lines of credit, funds, and prescription medications (collectively, the identity fraud charges); and a third on the POWPO charge. Although the court granted defendant's motion to dismiss the four forgery counts, the court indicated it would allow the prosecution to file a motion for reconsideration, which the prosecution subsequently filed.

Next, the prosecutor informed the court that he would obtain the nonevidentiary grand jury materials sought by the defense (i.e., the colloquy, jury selection questionnaires, etc.). The court then denied the motion for discovery of grand jury evidence based on the prosecutor's representation that all relevant evidentiary materials were contained in the numerous boxes of documentary evidence that the prosecution had obtained from federal investigators and provided to retained counsel.

Finally, the court addressed retained counsel's motion to withdraw. Retained counsel informed the court that he "like[d] being [defendant's] lawyer," but that defendant lacked the "ability" to pay for his services and was in need of court-appointed counsel. When the court asked defendant for his views on the motion, defendant expressed concern about the fact that the case had "been ongoing for some time" and the length of time it would likely take for new counsel to become familiar with the "intricacies of the case," the witnesses, and the prior negotiations between the parties. After further discussion (during which the court learned

that the Office of the Public Defender was representing a co-defendant), retained counsel volunteered to continue representing defendant in a limited capacity pending appointment of substitute counsel through the Office of Alternate Defense Counsel (ADC). Based on this offer, the court granted retained counsel's motion to withdraw subject to the condition that he continue to represent defendant in connection with three limited matters: (1) resolving the remaining discovery issues relating to nonevidentiary grand jury materials; (2) responding to the prosecution's motion for reconsideration of the order dismissing the forgery counts; and (3) arguing a motion to remove the passport-surrender bond condition. The court scheduled a hearing for May 2, 2006, vacated the trial scheduled for May 3, 2006, and made the following observation in support of its finding that defendant had effected a waiver of his statutory speedy trial right: "I think [retained counsel] said even … if I denied the motion and kept him on the case, he wouldn't be ready to go to trial on May 3rd because he hasn't been able to do what he needs to do because of the economic issue."

On May 2, 2006, retained counsel appeared with defendant and argued to remove the passport-surrender bond condition. The court reaffirmed its prior rulings and left the condition in place. Retained counsel then informed the court that the discovery issue relating to grand jury materials had been resolved. As to the remaining aspect of his conditional representation, retained counsel indicated he would file a written response to the prosecution's motion for reconsideration of the ruling dismissing the forgery counts. The court then turned to the matter of defendant's representation and (1) directed a deputy public defender to take defendant's application for the limited purpose of verifying his claim of indigency and (2) directed retained counsel to inform ADC of the need for appointed counsel who could handle such a complicated case.

### D. First Appointed Counsel

On May 9, 2006, defendant appeared in custody without counsel. Because the ADC had not responded to the court's request for substitute counsel, the court asked an attorney (first appointed counsel) who happened to be present that day in connection with another matter whether he would be willing to serve as defendant's court-appointed counsel. First appointed counsel agreed, though after conferring with defendant he informed the court that (1) "there is at least a potential that another private counsel could be retained in this case"; and (2) he would "obviously also need to have the opportunity to review what [he] underst[oo]d [was] a fairly voluminous file" consisting of approximately "five thousand pages." The court scheduled a five-day trial for August 21, 2006.

On May 12, 2006, retained counsel discharged his sole remaining duty by filing a response to the prosecution's motion seeking reconsideration of the order dismissing the four forgery counts.

In June 2006, defendant filed several pro se motions, including a motion to dismiss first appointed counsel. At a July 10, 2006, hearing, the court entered an order allowing defendant to proceed pro se after thoroughly advising him concerning this decision. Although the court granted defendant additional time to file motions, the court did not disturb the trial date.

On August 6, 2006, first appointed counsel filed a motion to suppress all evidence obtained pursuant to the search warrants, and a motion to reduce the bond and remove the passport-surrender condition.

On August 15, 2006, the trial court denied (1) defendant's motion to suppress; (2) defendant's motion for bond modification; and (3) the prosecution's motion to reconsider the order dismissing the four forgery counts.

On the scheduled trial date, August 21, 2006, the prosecutor informed the court that he intended to file an interlocutory appeal challenging the dismissal of the four forgery counts. The trial court reset the case for August 28, 2006.

On August 28, 2006, the prosecutor informed the court that he had filed an appeal. (By virtue of Crim. P. 38, the filing of the appeal automatically stayed all proceedings in the trial court until final determination of

the appeal.) The court scheduled a status conference for September 26, 2006.

On September 26, 2006, first appointed counsel informed the court that ADC had approved payment for a second attorney. The court appointed co-counsel (second appointed counsel) and scheduled a status conference for November 20, 2006.

On November 14, 2006, defendant's attorneys filed a motion to dismiss those charges that were not the subject of the appeal based on an alleged violation of defendant's statutory speedy trial rights.

A division of this court reversed the trial court's order dismissing the four forgery counts. *People v. Glaser*, 2006 WL 3095832 (Colo.App. No. 06CA1742, Nov. 2, 2006) (not published pursuant to C.A.R. 35(f)). The mandate issued on January 2, 2007.

On January 16, 2007, defendant appeared with counsel. Over defendant's objection, the court determined that the new statutory speedy trial deadline was July 2, 2007 (six months from the date the mandate had issued). The court then scheduled three separate trial dates: February 14, 2007 (POWPO charge); March 5, 2007 (securities fraud charges); and March 19, 2007 (identity fraud charges).

On January 25, 2007, defendant's attorneys filed additional motions to dismiss based on alleged violations of defendant's statutory and constitutional rights to a speedy trial. With respect to the statutory right, defendant's attorneys argued that (1) the prosecution's appeal was not interlocutory in nature and had not deprived the court of jurisdiction over the remaining charges; and (2) the court had erred at the April 18, 2006, hearing by determining that retained counsel's withdrawal necessarily mandated a trial continuance without first conducting an inquiry, pursuant to *People ex rel. Gallagher*, 933 P.2d at 588–89, to determine whether any substitute counsel was available who could try the case within the existing speedy trial deadline.

At a January 29, 2007, hearing, the court (1) addressed some unresolved issues raised in defendant's two motions to suppress and denied relief as to most of the evidence, deferred ruling as to the seized containers of prescription medications, and suppressed a few other items of seized evidence; (2) resolved defendant's motion for a bill of particulars; and (3) denied the motions to dismiss based on alleged speedy trial violations, except that the court deferred ruling on the "*Gallagher* issue" pending review of the transcript of the April 18, 2006, hearing.

On February 9, 2007, the trial court ruled, in reliance on *People ex rel. Gallagher*, 933 P.2d at 588–89, that it had violated defendant's statutory right to a speedy trial by holding defendant responsible for the trial continuance without first determining whether replacement counsel was available to try the case before the original speedy trial deadline expired on June 13, 2006. Accordingly, the court dismissed all of the charges, vacated the three trial dates, and directed that defendant be released from custody. That same day, the prosecution filed a motion for a stay. Although it is unclear whether the court ever ruled on this request, it is undisputed that defendant was not released from custody.

On February 13, 2007, defendant appeared in custody for a hearing on the prosecution's motion for reconsideration of the dismissal order. The court granted the prosecution's request, reasoning that any *Gallagher* error had been rendered moot on May 9, 2006, when first appointed counsel accepted a trial date beyond the original speedy trial period. *See* § 18–1–405(5.1), C.R.S.2009 (if a defendant represented by counsel fails to object to a trial date as being beyond the speedy trial deadline, the deadline is extended until the new trial date). The court then vacated its prior order of dismissal and denied the prosecution's motion to continue the POWPO trial (which was scheduled to commence the next day).

The POWPO trial began on February 14, 2007. The jury deadlocked, and the court declared a mistrial on February 16, 2007. The court scheduled a status conference for March 5, 2007.

### E. Second Appointed Counsel

On February 23, 2007, first appointed counsel committed suicide. Consequently, on

February 26, 2007, second appointed counsel filed a motion to continue the two trials set for March, as well as the POWPO trial, which had not yet been set for retrial. In his motion, second appointed counsel explicitly acknowledged that any delay from the date of the motion would be chargeable to the defense for purposes of statutory speedy trial. However, with the prosecution's assent, he also reserved defendant's right to appellate review of any speedy trial claim raised prior to that date. The court granted the motion that same day and scheduled three new trial dates: June 25, 2007 (securities fraud charges); July 16, 2007 (identity fraud charges); and August 1, 2007 (POWPO charge).

On April 3, 2007, defendant filed a petition for extraordinary relief in the supreme court. On April 11, 2007, the court denied the petition.

On May 7, 2007, defendant filed a motion asking the court to reconsider its order reinstating the charges. Defendant also filed a list of the motions that remained unresolved.

On May 10, 2007, second appointed counsel filed a motion seeking a stay of the proceeding pending federal court resolution of defendant's pro se habeas corpus petition, in which he had alleged violations of his statutory and constitutional speedy trial rights and had challenged the constitutionality of the passport-surrender bond condition. As part of this request, defendant offered to waive his speedy trial rights while the petition was pending in federal court.

On May 14, 2007, the court denied defendant's request for a stay. The court denied some of defendant's other motions, took others under advisement, and granted his request to transfer the charge of obtaining a controlled substance by fraud to the county where the offense had allegedly occurred. Due to a conflicting trial set for the date the securities trial was set to commence, the court rescheduled all three trials as follows: July 16, 2007 (securities fraud charges); August 20, 2007 (identity fraud charges); and August 27, 2007 (POWPO charge). In so doing, the court acknowledged defendant's ongoing speedy trial objections.

On May 31, 2007, defendant renewed his request for a stay of the proceedings pending resolution of his federal habeas petition, informing the court that a federal magistrate had issued a show cause order. On June 1, 2007, the court denied the request for a stay.

On July 3, 2007, the court denied several of defendant's motions which it had taken under advisement. However, the court granted defendant's motion to dismiss numerous theft and impersonation counts on statute of limitations grounds. On July 13, 2007, the People filed a motion asking the court to reconsider its ruling.

On July 16, 2007, defendant appeared in custody for trial on the securities fraud charges. However, second appointed counsel was absent, and his wife called the court to report that he was under a physician's care and would be unable to proceed for at least two or three days. On July 18, 2007, second appointed counsel appeared and informed the court that he was suffering from an unspecified medical condition that would prevent him from proceeding to trial on the scheduled dates. The court determined that sixty days was a reasonable period to add to the statutory speedy trial period (thus making the new deadline October 29, 2007). The court then rescheduled the trials as follows: August 20, 2007 (securities fraud charges); October 15, 2007 (remaining identity fraud charges not subject to dismissal); and October 24, 2007 (POWPO charge).

On August 16, 2007, the court granted the prosecution's motion for reconsideration and reinstated the identity fraud charges that it had previously dismissed on statute of limitations grounds.

The securities fraud trial began on August 20, 2007. On August 23, 2007, after the prosecution had rested its case, second appointed counsel requested a recess due to unspecified health problems. The next day, he revealed to the court that he suffered from a bipolar disorder, that this mental health condition was the basis for the July continuance, that he had been in an extreme manic state during the securities trial, and that he was about to go into a depressive state that would prevent him from continuing. The trial court verified these represen-

tations with second appointed counsel's psychiatrist, declared a mistrial, and scheduled a status conference for September 10, 2007.

### F. Third Appointed Counsel

On September 10, 2007, the court appointed another attorney (third appointed counsel) through ADC and, with defendant's consent, retained second appointed counsel as co-counsel. In addition, the court (1) reduced defendant's bond to $100,000 and removed the passport-surrender condition; (2) determined that the new statutory speedy trial deadline was January 29, 2008 (ninety days from the declaration of the mistrial, pursuant to section 18–1–405(6)(e), C.R.S.2009); and (3) rescheduled the trials for: December 17, 2007 (securities fraud charges), January 14, 2008 (identity fraud charges), and January 28, 2008 (POWPO charge). Defendant reasserted his earlier speedy trial objections and also argued that the declaration of a mistrial in the securities fraud trial had not stayed the statutory speedy trial deadline with respect to the other two trials.

On December 14, 2007, the court rescheduled the trial on the securities fraud charges for December 19, 2007.

On December 18, 2007, the prosecutor sent third appointed counsel and the court an e-mail indicating that an elderly out-of-state witness whose testimony was significant for the securities fraud case had become ill and would be unable to travel to Colorado. The next day, the court ruled, pursuant to CRE 801(d)(1) and 804(a)(4), that the ill witness was unavailable, and that the prosecution could therefore introduce the transcript of her testimony at the previous trial that had ended in a mistrial (in connection with this decision, the court observed that second appointed counsel had done a "fine job" cross-examining the witness, and that his performance had exceeded the applicable standard for competent counsel). Based on this ruling, third appointed counsel reluctantly moved for a continuance so that he could cross-examine the witness in the jury's presence. The court granted the motion, determined that the new statutory speedy trial deadline was June 19, 2008, and rescheduled the three trials as follows: May 5, 2008 (se-

curities fraud charges); May 19, 2008 (identity fraud charges); and May 28, 2008 (POWPO charge).

On January 25, 2008, the court held a hearing on defendant's motion to dismiss based on the alleged violation of his right to a speedy trial under the federal and state constitutions. On February 27, 2008, the court issued its ruling finding such a violation and dismissing all of the charges.

The People then filed this appeal.

### III. Analysis

### A. Length of the Delay

The trial court concluded that the relevant period of delay should be measured from the date the grand jury indictment was filed (August 31, 2005) until either (1) the date of the court's ruling (February 27, 2008); or (2) the month that defendant's three trials were then scheduled to commence (May 2008).

In making this calculation, the court concluded that, as to the refiled charges, the time period should not be measured from the date the original complaint was filed (March 2, 2005) because there was no indication the prosecution had acted in bad faith when supplanting the original complaint with the grand jury indictment. We agree with defendant that this aspect of the trial court's order is erroneous.

The trial court relied on cases which stand for the proposition that, absent a showing of prosecutorial bad faith, an analysis of a defendant's constitutional speedy trial rights with respect to refiled charges should not encompass any time that preceded the dismissal of the original charges. *See United States v. MacDonald,* 456 U.S. 1, 7, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982) ("the Speedy Trial Clause has no application after the Government, acting in good faith, formally drops charges"); *People v. Castango,* 674 P.2d 978, 981 (Colo.App.1983) (same). However, in each of these cases there was an interim period when no charges were pending. That did not occur in this case. Rather, here the identity fraud and POWPO charges were first filed on March 2, 2005,

and remained pending when the duplicative charges were filed by means of grand jury indictment. Only then were the original charges dismissed. Therefore, as to these refiled charges, we measure the length of delay from the date that defendant was arrested (February 20, 2005). *See MacDonald,* 456 U.S. at 9 n. 8, 102 S.Ct. 1497 (noting that, because indefinitely suspended charges against the defendant in *Klopfer v. North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), had never been formally dismissed or discharged, the speedy trial guarantee continued to apply); *Marion,* 404 U.S. at 320, 92 S.Ct. 455 (constitutional speedy trial runs from date of arrest).

However, we agree with the prosecution that, at the other end of the spectrum, the relevant date is the date that the trial court ruled (February 27, 2008), and not the dates that defendant's three trials were scheduled to commence (in May 2008). Although it is not entirely clear from the trial court's order, it appears the court considered the three-month period of pretrial delay that had yet to occur. In so doing, the court acknowledged that it was unaware of any decision in which a court had included a prospective period of delay in its constitutional speedy trial analysis. Neither are we.

Although we have discovered federal cases in which periods of prospective delay have been considered when dismissing a case *without prejudice* on *nonconstitutional* grounds, *see, e.g., United States v. Zabady,* 546 F.Supp. 35, 38 (M.D.Pa.1982) ("Consideration of prospective, as well as retrospective, delay is appropriate under Fed.R.Crim.P. 48(b)."), such an approach is seemingly at odds with the retrospective nature of the *Barker* test. *See United States v. MacDonald,* 435 U.S. 850, 858, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978) (most speedy trial claims are best considered only after the relevant facts have been developed at trial, when the benefit of hindsight makes it possible to make a nonspeculative estimation of the degree to which the delay impaired the defendant's ability to mount an adequate defense). Therefore, we conclude the last relevant date is February 27, 2008, the date of the trial court's order.

Although the foregoing discussion establishes the outside parameters for measuring the period of delay (approximately thirty months for the securities fraud charges, and approximately thirty-six months for the identity fraud and POWPO charges), the prosecution argues that the end parameter should be advanced to the date that defendant was brought to trial on the POWPO charge (February 14, 2007). In support of this argument, the prosecution points to *People v. Fears,* 962 P.2d 272, 279 (Colo.App.1997) (analyzing constitutional speedy trial based on the length of time from the date defendant was charged until the commencement of his first trial, which ended in a mistrial). We reject this approach for four reasons: (1) at this preliminary stage of the inquiry, we need only determine whether the length of delay was presumptively prejudicial such that examination of the other *Barker* factors is warranted, *see Moody,* 843 P.2d at 1363–64; *Fears,* 962 P.2d at 279 (the end-point was not in dispute as three-year-plus delay was sufficient to trigger analysis of the other *Barker* factors); (2) the two-year period of delay preceding the trial on the POWPO charge (February 20, 2005, to February 14, 2007) was substantial in and of itself; (3) a bright-line approach that turns on the date a defendant is first brought to trial would insulate any subsequent period of delay from constitutional inquiry, irrespective of the length; and (4) the mistrial in this case occurred in a trial that did not encompass all of the charges, and this and other considerations arising from defendant's severance request are better suited to analysis under the second prong of the *Barker* test (examining the reason for the delay).

Accordingly, we conclude defendant has satisfied his threshold burden of showing that the length of delay was presumptively prejudicial. *See Doggett,* 505 U.S. at 652 n. 1, 112 S.Ct. 2686 (suggesting that delays approaching one year are presumptively prejudicial); *Chavez,* 779 P.2d at 378 (upholding trial court's determination that twenty-three-month period of delay was presumptively prejudicial); *People v. Bost,* 770 P.2d 1209, 1216–17 (Colo.1989) (twenty-nine-month delay deemed sufficiently inordinate

to trigger inquiry into the other *Barker* factors). However, as set forth above, this determination only opens the door for analysis of the remaining *Barker* factors; it does not shift the ultimate burden of proof. *Small*, 631 P.2d at 154.

### B. The Reasons for the Delay

 We disagree with the People's argument that we may only consider delays resulting from deliberate prosecutorial attempts to delay the process. While such delays obviously should be given the greatest weight, the Supreme Court has made clear that other reasons for delay should also be considered:

> [D]ifferent weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531, 92 S.Ct. 2182 (footnote omitted). For this reason, in assigning responsibility for delay, we use neutral terms, such as "attributable" or "responsible," rather than "blame" or "fault." Following these guidelines, we will proceed to examine the reasons for the various delays on a period-by-period basis.

### 1. Arrest to Indictment

We begin by looking at the period of time the trial court did not consider: namely, the six months from the date that defendant was arrested on the identity fraud and POWPO charges (February 20, 2005) until the date that the complaint was superseded by the grand jury indictment (August 31, 2005). Although the record of the dismissed case is not before us, defendant, who was free on bond during this period, does not claim that he was pressing for a quick resolution of the charges in that case during the six months that it was pending. To the contrary, re-

tained counsel's comments at his appearances in this case support an inference that, when representing defendant in the original case, he anticipated the possible filing of additional charges based on the documentary evidence that had been seized from defendant's office pursuant to the second search warrant and related grand jury proceedings. Moreover, it is apparent from defendant's filings in this case that, even if the securities fraud charges had never been filed, he would have insisted that the POWPO charge be tried separately from the identity fraud charges. Accordingly, while we attribute this time period to the prosecution, we give little weight to this delay caused by the prosecution's filing decisions.

### 2. Indictment to First Scheduled Trial Date.

The first period analyzed by the trial court was the three and one-half months from indictment until defendant's arraignment (on December 13, 2005). The court concluded this period was a bit longer than usual, but that it was not attributable to either party given the complexity of the case. Likewise, the court determined that the period from arraignment until the first scheduled trial date (May 3, 2006) was appropriate and not attributable to either party. We agree with both conclusions. *See Barker*, 407 U.S. at 531, 92 S.Ct. 2182 ("the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge").

### 3. First Scheduled Trial Date to First Rescheduled Trial Date

 The trial court next concluded that it was responsible for the period of delay from the expiration of the original statutory speedy trial period (June 13, 2006) until the first rescheduled trial date (August 21, 2006) because (1) it had committed statutory error under *Gallagher* on May 9, 2006, by not inquiring whether first appointed counsel or other substitute counsel could be ready for trial before June 13, 2006; and (2) notwithstanding its subsequent determination that this statutory speedy trial error was cured by first appointed counsel's acceptance of a

trial date outside the original speedy trial period, it was fundamentally unfair to attribute such delay to defendant for constitutional purposes because first appointed counsel had only been appointed moments before he accepted the new trial date.

We disagree with this conclusion because it conflates the statutory and constitutional speedy trial analyses. The relevant constitutional question is whether the delay occasioned by the substitution of counsel should be attributed to defendant, and the record clearly shows that it was his inability to fulfill his contractual obligations to retained counsel that gave rise to the need for appointed counsel. Although defendant correctly notes that the trial court misspoke on April 18, 2006, when it stated that retained counsel had definitively represented he could not be fully prepared for trial by May 3, 2006, the court's misstatement is nevertheless accurate insofar as it constitutes a reasonable prediction based on retained counsel's remarks detailing the complexity of the documentary evidence and the unresolved issues that needed to be addressed before trial.

Further, the trial court's subsequent determination that it erred by not ascertaining whether first appointed counsel or other appointed counsel could have proceeded to trial by June 13, 2006, overlooks the fact that, when first appointed counsel entered his appearance, he informed the court that defendant was still exploring the possibility of retaining private counsel. Given this uncertainty concerning defendant's representation, it was quite reasonable for the court to presume that the trial would have to be rescheduled to a date after the June 13, 2006 statutory speedy trial deadline.

█ In addition, even if we were to assume that retained counsel, first appointed counsel, or some other appointed counsel might have been able to litigate all of the suppression issues in time to try the factually simplest portion of the trifurcated case (the POWPO charge) before June 13, 2006, such an expeditious resolution of the POWPO charge would not have diminished the inevitable periods of delay (as shown by later events) necessary to litigate the numerous other contested issues in the two more complex portions of the case. Accordingly, because defendant sought severance of the charges, we attribute to him those periods of delay that could have been avoided if the court had denied his request and conducted a single consolidated trial. *See United States v. Veillette,* 688 F.Supp. 777, 782 (D.Me.1988) ("The delay resulting from the severance of the charges in the original indictment . . . [is] directly and exclusively attributable to the defendant."); *State v. Smith,* 59 Haw. 456, 583 P.2d 337, 345 (1978) (for purposes of constitutional speedy trial inquiry, defendant was responsible for delay caused by severance of charges into three separate trials at his request).

### 4. The Prosecution's Interlocutory Appeal

█ Nor are we persuaded by the trial court's conclusion that "the state" (which, for purposes of this period of delay, the court indicated encompassed both the prosecution and the court) was responsible for the time consumed by litigation of the interlocutory appeal. (The trial court calculated this period as running from the day the prosecution announced its intent to appeal, August 21, 2006, through the trial dates that were set after the mandate issued: February 14, 2007, March, 5, 2007, and March 19, 2007.) The court reached this conclusion by reasoning that "it was not defendant's fault that [the court] erroneously granted his motion to dismiss the four forgery counts."

But defendant advanced the erroneous legal argument and persuaded the court it had merit. Accordingly, the prosecution cannot be charged for the resulting period of delay necessary to correct the court's flawed ruling. *See United States v. Loud Hawk,* 474 U.S. 302, 315, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986) (for purposes of assigning responsibility for delay under the second prong of the *Barker* test, an interlocutory appeal by the government ordinarily is a valid reason that justifies delay unless it is frivolous or tangential); *People v. Jamerson,* 198 Colo. 92, 97, 596 P.2d 764, 768 (1979) ("Defendant's original motion to dismiss was not legally sustainable as we ruled in *People v. Jamerson,* [196 Colo. 63, 580 P.2d 805 (1978)]. He cannot now use the fact that a trial court erroneous-

ly upheld his position to predicate an argument that an unreasonable delay took place because the prosecution appealed and obtained a reversal of the erroneous ruling.").

Further, because the appeal was timely filed, it is immaterial (contrary to the apparent conclusion of the trial court) that the prosecution did not announce its intent to appeal until the day of trial. This is particularly true since the announcement was made only six days after the court had issued its final ruling dismissing the forgery counts, on August 15, 2006.

### 5. Mistrial on the POWPO Charge

Another period of delay which the trial court attributed to the state was the time relating to the mistrial on the POWPO charge. In so doing, the court gave this little weight (1) in recognition of the fact that a mistrial extends the statutory speedy trial period for up to three months; and (2) because this procedural event was eclipsed by first appointed counsel's suicide the following week. The court explained that this allocation of responsibility was appropriate "because the mistrial was the result of the state['s] failing to convince a jury unanimously of defendant's guilt."

Although we question whether it is appropriate to infer that the jury deadlocked because of a shortcoming in the prosecution's proof, for purposes of analysis we will nevertheless accept the trial court's conclusion and attribute the period of time running from the scheduling hearing on January 16, 2007, through the declaration of a mistrial on February 16, 2007, to the prosecution.

### 6. Suicide and Mental Condition of Defense Counsel

 The most substantial periods of delay at issue stem from first appointed counsel's suicide and second appointed counsel's bipolar condition. Each of these periods of delay consumed approximately five months if measured, respectively, (1) from February 26, 2007, the date on which second appointed counsel moved for a continuance based on first appointed counsel's suicide, through July 16, 2007, the date that the securities fraud trial was scheduled to begin; and (2) July 16, 2007, the date second appointed counsel first obtained a continuance based on his medical condition, through December 17, 2007, the date the first rescheduled trial was set to commence after third appointed counsel was appointed as co-counsel.

As set forth above, when conducting its speedy trial analysis, the court attributed both of these periods of delay to the state solely on the ground that, as state-compensated counsel, first and second appointed counsel were acting as agents of the state. We disagree with this attribution.

In *Brillon*, 129 S.Ct. at 1291, the Supreme Court held that "assigned counsel generally are not state actors for purposes of a speedy-trial claim," absent a systemic breakdown in a state's public defender system (which has not been alleged here). The Court explained:

A contrary conclusion could encourage appointed counsel to delay proceedings by seeking unreasonable continuances, hoping thereby to obtain a dismissal of the indictment on speedy-trial grounds. Trial courts might well respond by viewing continuance requests made by appointed counsel with skepticism, concerned that even an apparently genuine need for more time is in reality a delay tactic. Yet the same considerations would not attend a privately retained counsel's requests for time extensions. We see no justification for treating defendants' speedy-trial claims differently based on whether their counsel is privately retained or publicly assigned.

*Id.* (appointed counsel's failure to move case forward attributable to defendant under second prong of the *Barker* test).

Here, neither first appointed counsel's tragic death nor second appointed counsel's serious mental health condition justifies a departure from the rule of *Brillon*. Both attorneys were engaged in the private practice of law at the time they were appointed to this case as ADC, and *Brillon* instructs that we must analyze the delays they caused for their court-appointed client in the same way we that would treat similar delays arising in the case of a paying client. Therefore, we conclude that both of these five-month peri-

ods must be attributed to defendant. However, in weighing these assignments of responsibility, we give due consideration to the highly unusual circumstances.

### 7. Continuance of Rescheduled Trial

The final period of delay runs from the date the trial court granted third appointed counsel's motion for a continuance (December 17, 2007) until the date of the court's ruling dismissing the charges (February 20, 2008). We agree with the trial court's attribution of this delay to defendant because third appointed counsel made a tactical decision to seek a continuance in order to prevent the prosecution from relying on the ill witness's transcribed testimony from the first trial. However, we disagree with the court's conclusion declining to give much weight to this continuance request. Although we acknowledge the prosecutor expressed a preference for the witness's live testimony and did not vigorously contest the defense's request for a continuance, it is clear he was ready to begin the trial that morning (indeed, at one point he complained that the defense was attempting "to benefit from a mistrial that it caused").

### C. Defendant's Demand for a Speedy Trial

The trial court found that defendant had consistently demanded a speedy trial. For the most part, we agree. However, we note that defendant twice attempted to stay these proceedings pending resolution of his pro se petition in federal court. Although defendant's federal petition was based in part on a constitutional speedy trial claim, his willingness to suspend these proceedings without any assurance of timely success in federal court provides some basis to question whether the prompt resolution of these charges was truly his paramount concern. We nonetheless agree that this factor should be weighed in defendant's favor.

### D. Prejudice to Defendant

We analyze the final factor according to the following principles:

> Prejudice ... should be assessed in the light of the interests of defendants which the speedy trial right was designed to pro-

tect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past.

*Barker*, 407 U.S. at 532, 92 S.Ct. 2182 (footnote omitted).

Here, defendant remained free on bond during the six months when the original case was pending, and he has never identified any prejudice resulting from the manner in which that case was supplanted by the grand jury indictment. Therefore, we perceive no prejudice with respect to this period of time.

As to the remaining period of time, the trial court found that defendant was prejudiced in the following ways: (1) he was incarcerated; (2) his incarceration interfered with his ability to share his "comprehensive understanding" of the "innumerable pertinent documents" with first and second appointed counsel (as shown by the displeasure with first appointed counsel's representation that led to defendant's "short-lived period of self-representation," and by his subsequent expression of frustration with second appointed counsel's inability to "digest and organize the defense exhibits" during the securities fraud trial—an inability which second appointed counsel later admitted was a result of his manic condition); (3) his incarceration "led directly to his indigency, and the loss of his ability to hire counsel of his choice"; and (4) he likely experienced mental anguish as a result of the twice "broken promise of release" that occurred when (a) his bond was revoked after it was discovered that he had been released without satisfying the passport-surrender condition, and (b) he was not released from custody in contravention of the court's order of February 9, 2007. On the other side of the equation, the court found that defendant had not been prejudiced by "the death of a witness or other losses of

evidence," and that the delays had "probably" caused greater "evidentiary prejudice to the prosecution."

With respect to the first interest identified in *Barker*, we recognize that at the time the court ruled defendant had been incarcerated for two and one-half years without being convicted of anything. That interest, however, is given less weight than the potential impairment of his defense. *See People v. Hogland*, 37 Colo.App. 34, 38, 543 P.2d 1298, 1301 (1975) (under *Barker*, the mere fact of incarceration is to be accorded relatively slight weight where there is no showing of prejudice resulting from incarceration apart from the fact of imprisonment itself).

The record does not support the trial court's findings concerning the consequences of defendant's incarceration. There is no evidence to support the court's assumption that, if defendant had remained free on bond, he would have had the means to continue paying for retained counsel's services. Although it is true that defendant's incarceration coincided with his indigency, defendant did not prove that his incarceration caused him to lose a legitimate source of income or deprived him of access to lawfully acquired assets. *See Jamerson*, 198 Colo. at 96, 596 P.2d at 767 (trial court erred in its constitutional speedy trial analysis by relying on defendant's unsubstantiated allegations that delay had prevented him from continuing to retain private counsel).

Nor is there evidentiary support for the court's determination that defendant's incarceration was the cause of his dissatisfaction with his court-appointed attorneys. Because the record does not establish a causal link between defendant's incarceration and his indigency, it necessarily follows that the need for appointed counsel cannot be ascribed to defendant's incarceration. Therefore, we do not consider those complaints which flowed from defendant's preference for private counsel of his own choosing.

The record lends some support to the trial court's determination that defendant likely would have been better able to help his attorneys review the documentary evidence if he had not been in jail. That fact, however, has nothing to do with the delays described above; defendant's pretrial incarceration would have impaired his ability to help counsel review the documentary evidence even if the case had proceeded to trial expeditiously.

The fact that most of the charges are so heavily dependent on documentary evidence also undermines defendant's claim of prejudice because, unlike witnesses' memories, such evidence does not fade with the passage of time. Indeed, as the trial court correctly recognized, defendant was unable to specify how the delay had impaired his ability to defend himself against the charges. This failure of proof is critical, because "a central interest served by the Speedy Trial Clause is the protection of the factfinding process at trial. The essence of a defendant's Sixth Amendment claim in the usual case is that the passage of time has frustrated his ability to establish his innocence of the crime charged." *MacDonald*, 435 U.S. at 859–60, 98 S.Ct. 1547; *see, e.g., Chavez*, 779 P.2d at 378 (defendant's constitutional right to speedy trial was violated where, during a period of delay, there was a loss of memory and recall by several witnesses and another important witness died).

Finally, we question the soundness of the court's finding that defendant was prejudiced by the mental anguish he likely experienced as a result of the fluctuations in his custodial status. Although we are sensitive to such concerns, it is noteworthy that (1) defendant's brief release from custody (on or about September 26, 2005) should not have occurred because he had not satisfied the passport-surrender condition, and would not have occurred had he not paid for his bond premium with a check that was unsupported by sufficient funds; and (2) the court's unfulfilled order directing that defendant be released from custody on February 9, 2007, was based on an erroneous legal ruling which the court reversed only four days later.

### E. Conclusion

In summary, we attribute approximately twenty-three months of delay (variously weighed, as set forth above) to defendant. This is more than half of the relevant time period (thirty to thirty-six months, depending

on the charges). We attribute at most seven months of the delay to the state, with little weight attached. Although we acknowledge that defendant consistently asserted his right to a speedy trial (except when seeking to stay these proceedings during the federal litigation), he made only a minimal showing of prejudice without ever specifying how the delay had impaired his ability to mount a defense to the charges.

Considering the totality of these circumstances, and in light of the Supreme Court's recent *Brillon* decision, we conclude defendant did not carry his burden of proving a violation of his constitutional right to a speedy trial. *See Jamerson,* 198 Colo. at 96, 596 P.2d at 767 (trial court's order of dismissal based on constitutional speedy trial reversed because defendant was responsible for much of the delay during the three years the case was pending, and he did not demonstrate prejudice).

The order of dismissal is reversed and the case is remanded with directions to reinstate the charges.

Judge ROY and Judge FURMAN concur.