2014 COA 165

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Scott R. NELSON, Defendant–Appellant.**

**Court of Appeals No. 13CA1237**

Colorado Court of Appeals, Div. VII.

Announced December 4, 2014

Rehearing Denied January 15, 2015

John W. Suthers, Attorney General, Lisa K. Michaels, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Laura L. Magner, Boulder, Colorado, for Defendant–Appellant.

Opinion by JUDGE J. JONES

¶ 1 Defendant, Scott R. Nelson, appeals the judgment of conviction entered on a jury verdict finding him guilty of aggravated motor vehicle theft. Among the issues he raises is a question of first impression in Colorado: When the state files charges against a defendant, later seeks and obtains dismissal of the charges, and still later refiles the charges, does the period during which the defendant first was charged count in assessing a contention by the defendant that he was denied his constitutional right to a speedy trial? We answer that question "yes." Nonetheless, we conclude that defendant was not denied his constitutional right to a speedy trial. We also reject his other contentions of error. Accordingly, we affirm.

## I. Background

¶ 2 Following an automobile accident, defendant's girlfriend rented a vehicle from Mesa Motors, Inc. (Mesa), with the understanding that an insurance company would pay for the rental. About three weeks later, she switched the rental to a different vehicle provided by Mesa. Shortly thereafter, defendant signed the rental agreement.

¶ 3 The insurance company told defendant and his girlfriend that it would stop paying for the vehicle about two weeks after the rental began. Neither defendant nor his girlfriend told Mesa about the insurance company's decision, but continued to represent to Mesa that the insurance company would continue to pay. However, Mesa's owner, David Ward, learned of the insurance company's decision. When Mr. Ward confronted defendant, defendant assured Mr. Ward that he would pay for any rental charges not paid for by the insurance company.

¶ 4 After using the vehicle for about two months, defendant told Mr. Ward he wanted to buy the vehicle. They agreed to a purchase price, but also agreed that defendant would pay any accrued rental charges up to the date of purchase.

¶ 5 Defendant did not pay the purchase price or the unpaid rental charges, nor did he return the vehicle. Defendant did not return Mr. Ward's telephone calls for one to two weeks. Mr. Ward went to the address defendant had provided as his residence, but discovered that defendant and his girlfriend had moved without leaving a forwarding address.

¶ 6 Mr. Ward reported the vehicle stolen. He left defendant a voicemail message telling defendant he had contacted the police. Defendant left a return voicemail message for Mr. Ward telling him where he would find the vehicle. Mr. Ward found the car where defendant had said it would be.

¶ 7 The People ultimately charged defendant with first degree aggravated motor vehicle theft, theft, and theft of rental property. The district court granted defendant's motion for a judgment of acquittal on the theft of rental property charge. A jury found defen-

dant guilty of aggravated motor vehicle theft, but not guilty of theft.

## II. Discussion

¶ 8 Defendant raises four issues on appeal. First, he contends that his statutory right to a speedy trial was violated. Second, he contends that his right to a speedy trial under both the United States and Colorado Constitutions was violated. Third, he contends that the district court erred in rejecting his proposed jury instruction on the affirmative defense of consent. And fourth, he contends that the district court erred in rejecting his proposed jury instruction on the affirmative defense of mistake of fact. We address and reject these contentions in turn.

### A. Speedy Trial

¶ 9 Before trial, defendant moved to dismiss the charges based on his statutory right to a speedy trial and his constitutional right to a speedy trial. The district court denied the motion. Defendant contends that the court erred in applying the speedy trial guarantees of the statute and the federal and state constitutions. We are not persuaded.[1]

#### 1. Statutory Right

¶ 10 Section 18–1–405(1), C.R.S.2014, provides, as relevant here, that a defendant must be brought to trial within six months of a plea of not guilty. *See also* Crim. P. 48(b). If he is not, and no valid statutory basis exists for extending the six-month period, the court must dismiss the charges, and the People may not thereafter charge the defendant with any offense "based upon the same act or series of acts arising out of the same criminal episode."

¶ 11 The People initially charged defendant on December 15, 2011. He entered a not guilty plea on May 23, 2012. The trial on the charges did not begin until April 16, 2013. Because more than six months elapsed between the date of his initial plea—May 23,

2012—and the first day of trial—April 16, 2013—defendant argues that the court erred in denying his motion to dismiss based on section 18–1–405(1).

¶ 12 To properly assess defendant's argument, however, we must consider the complete procedural history of this prosecution.

¶ 13 The People moved to dismiss the original charges without prejudice on July 31, 2012. Defendant did not object. The district court granted that motion on August 1, 2012, when almost four months remained in the statutory six-month period.

¶ 14 The People refiled the charges on October 9, 2012. At defendant's initial court appearance on the refiled charges, his counsel raised the speedy trial issue, taking the position that the statutory speedy trial period would expire on November 23, 2012. The court held a hearing on the issue on November 7 and 8, 2012. At that hearing, defendant's counsel also raised "the constitutional right to a speedy trial." The prosecutor told the court that the reason the charges had been dismissed was that she had been under the impression that only defendant's girlfriend had signed the rental agreement, making defendant's conviction unlikely. Mr. Ward subsequently contacted the prosecutor and told her defendant had signed the rental agreement. The prosecutor followed up, found that defendant had signed the rental agreement, and based on that discovery decided to refile the charges. The prosecutor affirmatively represented that she had not sought to dismiss the charges to circumvent defendant's speedy trial right.

¶ 15 Following the hearing, the court ruled from the bench that there was no statutory violation because the charges had been dismissed without prejudice relatively early in the speedy trial period and the prosecutor had not sought to dismiss the charges to get around the speedy trial deadline. More specifically, the court found that the prosecutor had been minimally negligent (if negligent at

1. We address defendant's statutory argument first because if that argument is correct we do not need to address his constitutional argument. *See People v. Lybarger,* 700 P.2d 910, 915 (Colo. 1985) ("[A] court should not decide a constitutional issue unless ... the necessity for such a

decision is clear and inescapable."); *see also Lyng v. Nw. Indian Cemetery Protective Ass'n,* 485 U.S. 439, 445, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988); *O'Donnell v. State Farm Mut. Auto. Ins. Co.,* 186 P.3d 46, 49 n. 4 (Colo.2008).

all), but had not acted in bad faith. Following *People v. Walker*, 252 P.3d 551 (Colo. App.2011), the court concluded that the statutory period would begin anew once defendant pleaded not guilty to the refiled charges. The court also rejected the constitutional claim.

¶ 16 Defendant pleaded not guilty to the refiled charges on November 8, 2012. He later filed a written motion to dismiss on both statutory and constitutional speedy trial grounds. Following another hearing, the court denied the motion, adopting its findings and conclusions from the prior hearing. The court reiterated its finding that the prosecutor had not acted in bad faith.

### a. Standard of Review

¶ 17 We review the district court's interpretation of section 18–1405(1) de novo. *Romero v. People*, 179 P.3d 984, 986 (Colo. 2007) ("The interpretation of a statute is a question of law, which is reviewed de novo."); *People v. Lahr*, 2013 COA 57, ¶ 30, 316 P.3d 74 (same). But to the extent the court's resolution of the issue is based on findings of fact, we review those findings for clear error. *See People v. Arapu*, 2012 CO 42, ¶ 16, 283 P.3d 680; *People v. Montoya*, 259 P.3d 555, 556 (Colo.App.2011). A district court's factual finding is clearly erroneous only if it has no support in the record. *Sanchez–Martinez v. People*, 250 P.3d 1248, 1254 (Colo.2011).

### b. Analysis

 ¶ 18 "When charges in a complaint are properly dismissed within the [statutory] speedy trial period without prejudice, they become a nullity. If and when the defendant is arraigned under subsequent information, the [statutory] speedy trial period begins anew, even if the charges are identical." *Huang v. Cnty. Court*, 98 P.3d 924, 928 (Colo.App.2004); *accord Walker*, 252 P.3d at 552; *Meehan v. Cnty. Court*, 762 P.2d 725,

726 (Colo.App.1988). There is an exception to this rule, however, where the defendant affirmatively establishes that the prosecution indiscriminately dismissed and refiled the charges to avoid the mandate of section 18–1–405(1). *Walker*, 252 P.3d at 552; *Meehan*, 762 P.2d at 726.

¶ 19 The district court found, with record support, that the prosecutor had not dismissed the charges and refiled them to avoid the statutory six-month deadline. Though defendant argues that we can conclude to the contrary, we may not disregard a district court's factual finding that has record support.[2]

¶ 20 Therefore, we conclude that, because defendant's trial began within six months after he pleaded not guilty to the refiled charges, there was no violation of his statutory right to a speedy trial. *See Walker*, 252 P.3d at 552; *Huang*, 98 P.3d at 929–30; *Meehan*, 762 P.2d at 726.

### 2. Constitutional Right

### a. Applicable Law and Standard of Review

 ¶ 21 Though "[t]he speedy trial statute is intended to implement the constitutional right to a speedy trial," *People v. Deason*, 670 P.2d 792, 796 (Colo.1983), the analysis of whether the constitutional right was violated differs from the analysis of whether the statutory right was violated. *See People v. Harris*, 914 P.2d 425, 430 (Colo. App.1995). (Presumably this is because of statutory language and the fact that the constitutional right does not dictate a specific period of time within which a defendant must be brought to trial. *See People v. O'Neill*, 185 Colo. 202, 206, 523 P.2d 123, 125 (1974).)

 ¶ 22 The constitutional right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and by article II, section 16 of the Colorado Constitution.[3] "Under both provi-

2. Even were we to review the record de novo, we would conclude that the prosecution did not act in bad faith.

3. The Sixth Amendment says that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial." This provision is applicable to the states pursuant to the Four-

teenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 222–23, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967); *see Valdez v. People*, 174 Colo. 268, 271, 483 P.2d 1333, 1334 (1971). Article II, section 16 says that "[i]n criminal prosecutions the accused shall have the right to ... a speedy public trial."

sions, the right to a speedy trial attaches with the filing of a formal charge or with a defendant's arrest." *People v. Glaser*, 250 P.3d 632, 635 (Colo.App.2010) (citing *United States .v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), and *People v. Chavez*, 779 P.2d 375, 376 (Colo.1989)). And under both provisions, compliance is determined by an ad hoc consideration of four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant resulting from the delay. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Chavez*, 779 P.2d at 376.

¶ 23 But not every claimed violation of the constitutional right to a speedy trial requires consideration of all four factors. If the length of the delay is not at least "presumptively prejudicial," further inquiry is not required. *Doggett v. United States*, 505 U.S. 647, 651–52, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992); *People v. Sandoval–Candelaria*, 2014 CO 21, ¶ 35, 321 P.3d 487. Though neither the United States Supreme Court nor the Colorado Supreme Court has determined precisely the length of delay that is presumptively prejudicial, many courts, including Colorado appellate courts, have applied a rule of thumb of "approaching one year." *See Doggett*, 505 U.S. at 652 n. 1, 112 S.Ct. 2686; *Sandoval–Candelaria*, ¶ 36; *Glaser*, 250 P.3d at 635.

¶ 24 The defendant has the burden of proving that he was denied his constitutional right to a speedy trial. *People v. Small*, 631 P.2d 148, 154 (Colo.1981); *Glaser*, 250 P.3d at 635.

¶ 25 As with a statutory speedy trial claim, we review a district court's factual findings underlying a ruling on a constitutional speedy trial claim only for clear error: we will not disturb those findings if they are supported by the record. *See Chavez*, 779 P.2d at 378; *Glaser*, 250 P.3d at 636. We review a district court's application of the four *Barker* factors de novo. *Glaser*, 250 P.3d at 636.

### b. Analysis

### i. Presumptively Prejudicial Delay

¶ 26 Defendant argues that the period of delay includes the entire time between the initial filing of the charges on December 15, 2011, and the beginning of the trial on April 16, 2013. The People, however, argue that the period of delay restarted when they refiled the charges on October 9, 2012. We must resolve the dispute because if the People are correct, the period of delay was not presumptively prejudicial: further inquiry would not be required and we would hold that there was no violation of defendant's constitutional right to a speedy trial. *See People v. Green*, 2012 COA 68, ¶ 35, 296 P.3d 260 (six-month sentencing delay not presumptively prejudicial).

¶ 27 We conclude that neither defendant nor the People are entirely correct. The period after the original charges were dismissed until the prosecution refiled the charges does not count for speedy trial purposes. But the period from the initial filing of the charges to the dismissal of the charges does. Adding that period (229 days) to the period from the refiling of the charges to the beginning of trial (189 days) equates to a period of more than one year, a presumptively prejudicial length of time.

¶ 28 We reach this conclusion based primarily on the Supreme Court's decision in *United States v. MacDonald*, 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982). In that case, the Army charged the defendant with three murders, but several months later the military charges were dismissed. A little more than four years later, a federal grand jury charged the defendant with the murders. The defendant challenged the civilian charges on speedy trial grounds. The Supreme Court held that the period after dismissal of the military charges until the date of indictment by the federal grand jury could not be counted in determining whether the defendant's Sixth Amendment right to a speedy trial had been violated. *Id.* at 8–10, 102 S.Ct. 1497. The Court reasoned as follows:

- The constitutional right to a speedy trial is "not primarily intended to pre-

vent prejudice to the defense caused by the passage of time.... [Rather it] is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *Id.* at 8, 102 S.Ct. 1497 (citation omitted).[4]

- These concerns are not implicated or are diminished when charges are not pending. *Id.* at 8–9, 102 S.Ct. 1497.

- Therefore, the speedy trial right "has no application after the Government, acting in good faith, formally drops charges." *Id.* at 7, 102 S.Ct. 1497; *see also id.* at 8, 102 S.Ct. 1497 ("Once charges are dismissed, the speedy trial guarantee is no longer applicable."). Put another way, once charges are dismissed, the defendant is "legally and constitutionally in the same position as though no charges had been made." *Id.* at 10, 102 S.Ct. 1497.

¶ 29 Applying *MacDonald* here, it is clear that the period after the court dismissed the initial charges until those charges were refiled is irrelevant for purposes of assessing defendant's constitutional speedy trial claim. Though defendant contends that the prosecution acted in bad faith in seeking dismissal of the original charges, the district court found otherwise, and, as noted above, its finding is supported by the record. The more difficult question is whether the period from the initial filing of the charges until the dismissal of those charges is relevant. *MacDonald* does not answer that question directly. But we conclude that the rationale of *MacDonald* supports the conclusion that this period counts.

¶ 30 *MacDonald* did not hold that the period before the dismissal did not count; it held only that the period after dismissal until refiling did not count. During the period in which a defendant initially faces charges, the interests animating the speedy trial guarantee are in play. And we note, as have other courts, that were the rule otherwise—that is, if the rule were that the speedy trial clock resets, rather than resumes, upon the refiling of previously dismissed charges—"the government would be able to nullify a defendant's speedy trial right by the simple expedient of dismissing and reindicting whenever speedy trial time was running out on its prosecution." *United States v. Colombo*, 852 F.2d 19, 23–24 (1st Cir.1988); *accord Commonwealth v. Butler*, 464 Mass. 706, 985 N.E.2d 377, 384 (2013) (applying the Massachusetts Constitution).

¶ 31 The majority of courts in other jurisdictions that have dealt with this issue have held that, although the interim period between government-initiated dismissal and refiling does not count (absent a showing of bad faith by the government), the period between initial filing and dismissal does, and that the speedy trial clock resumes upon refiling by the same sovereign. *See, e.g., Colombo*, 852 F.2d at 23–24; *United States v. Fuesting*, 845 F.2d 664, 668 (7th Cir.1988); *Butler*, 985 N.E.2d at 384–85; *Matter of Welfare of G.D.*, 473 N.W.2d 878, 881–82 (Minn.Ct.App.1991); *State v. Trammell*, 240 Neb. 724, 484 N.W.2d 263, 266 (1992); *State v. Adams*, 133 N.H. 818, 585 A.2d 853, 855–56 (1991); *State v. Brazell*, 325 S.C. 65, 480 S.E.2d 64, 75 (1997); *State v. Guerrero*, 110 S.W.3d 155, 159 (Tex.App.2003); *Caton v. State*, 709 P.2d 1260, 1264 (Wyo.1985); *cf. State v. Gill*, 48 Kan.App.2d 102, 283 P.3d 236, 240, 244–46 (2012) (speedy trial clock restarts if the prosecution dismissed the first case because of necessity or if the charges in the second case are not identical to those in the first; otherwise, a government-initiated "dismissal of the first case will be construed as merely tolling the constitutional speedy trial clock"). Some other courts have taken a contrary view. *See, e.g., United States v. Wallace*, 848 F.2d 1464, 1469 (9th Cir.1988); *United States v. Atisha*, 804 F.2d 920, 929 (6th Cir.1986); *State v. Hill*, 138 N.M. 693, 125 P.3d 1175, 1178–79 (App.2005); *State v.*

---

**4.** The Court limited its discussion and holding to the Sixth Amendment, noting that the due process analysis may differ. *United States v. Mac-* *Donald*, 456 U.S. 1, 7, 8, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982).

*Henson,* 335 Md. 326, 643 A.2d 432, 438–39 (1994).

¶ 32 For the reasons expressed above, we agree with the majority approach. Therefore, the period during which defendant originally faced the charges must be included in considering his constitutional speedy trial claim.[5] Doing so leads to the conclusion that the delay in bringing defendant to trial was presumptively prejudicial. We turn then to an assessment of the four *Barker* factors.

### ii. *Barker* Factors

#### (1). Length of the Delay

¶ 33 The length of delay here was just short of fourteen months. This delay, however, was by no means extreme. And we observe, as did the district court, that defendant was not incarcerated during any of that period. *See MacDonald,* 456 U.S. at 8, 102 S.Ct. 1497 (noting that one of the concerns underlying the speedy trial guarantee is "minimiz[ing] the possibility of lengthy incarceration prior to trial"). Therefore, this factor weighs only slightly in defendant's favor.

#### (2). Reasons for the Delay

¶ 34 The district court concluded that although the delay was attributable to the prosecution, there was no bad faith on the prosecution's part, merely "minimal" negligence. This conclusion is supported by the record. The prosecution's negligence weighs only slightly in the defendant's favor. *See Barker,* 407 U.S. at 531, 92 S.Ct. 2182 (government negligence weighs less heavily than deliberate government conduct intended to delay the trial).

#### (3). Defendant's Demand for Speedy Trial

¶ 35 Defendant timely asserted his right to a speedy trial.

#### (4). Prejudice to Defendant

¶ 36 In *Barker,* the Court identified three interests in light of which a claim of prejudice should be assessed: (1) preventing oppressive pretrial incarceration; (2) minimizing the accused's anxiety and concern; and (3) limiting the possibility the defense will be impaired. *Id.* at 532, 92 S.Ct. 2182; *see also Glaser,* 250 P.3d at 647. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker,* 407 U.S. at 532, 92 S.Ct. 2182.

¶ 37 Defendant's counsel initially argued that defendant was prejudiced by the delay because (1) he would not be able to obtain a witness's presence by November 23, 2012, the date the original six-month statutory speedy trial period would have expired; (2) he was suffering personal anxiety; (3) since the refiling he had experienced a heart condition called "acute coronary syndrome"; (4) he was having difficulty obtaining subsidized housing because, he assumed, of the pending charge; and (5) he could not leave the state and return to his home in Montana while the charges were pending.

¶ 38 The district court rejected these assertions, noting at the outset that defendant had not submitted any evidence to substantiate them, nor made any offer of proof. Nonetheless, the court addressed the arguments on their merits. As for the witness, the court ruled that there was no prejudice because a new trial date would be set and there had been no showing that defendant would be unable to procure the witness for trial. As for the personal anxiety and subsidized housing, the court ruled that these concerns were not prejudice cognizable in this context.[6] And as for restrictions on movement, the court said that defendant had been free to leave the state at any time, but

---

5. Our holding applies to defendant's claims under both the United States and Colorado Constitutions. The supreme court has analyzed claims under both provisions in the same way. *See People v. Chavez,* 779 P.2d 375, 376 (Colo.1989); *Lucero v. People,* 173 Colo. 94, 96, 476 P.2d 257, 259 (1970) (the speedy trial guarantee of article

II, section 16 "is congruent with" that of the Sixth Amendment).

6. And as to the subsidized housing, the court reasoned that any difficulty stemmed at least in part from the charges pending against defendant's girlfriend.

had stayed in Colorado only because he had made a personal choice to do so.

¶ 39 Finally, the court found that defendant had not shown that the delay prejudiced his defense in any way. He had not shown a loss of evidence or of witnesses, or that any witness's memory had faded.

¶ 40 In sum, the district court concluded that there had been "no showing of prejudice."

¶ 41 We similarly conclude that any showing of prejudice was minimal. As noted, defendant was not incarcerated at any time from the initial filing of charges to the conclusion of trial. Though defendant's counsel made claims about anxiety and concerns, he presented no evidence or offer of proof to establish any such anxiety or concern beyond that normally to be expected from the fact of a criminal prosecution. And he did not allege, much less establish, any prejudice to the defense resulting from the delay.

### (5). Conclusion

¶ 42 Considering all four *Barker* factors, we conclude that defendant was not denied his constitutional right to a speedy trial. The length of the delay was not extreme (or, indeed, unusual), and he failed to establish any significant prejudice resulting from the delay.

## B. Jury Instructions

¶ 43 Defendant tendered two jury instructions on purported affirmative defenses: consent and mistake of fact. The district court rejected both, reasoning that because the People had charged him with theft by deception, the instructions were unnecessary: to prove deception, the prosecution necessarily had to prove that the victim had not consented and that defendant had not acted under a mistaken belief that he could retain the vehicle indefinitely.

¶ 44 On appeal, defendant maintains that the court erred in denying both instructions. We conclude otherwise.

### 1. Additional Background

¶ 45 The aggravated motor vehicle count, as presented to the jury, required the prose-

cution to prove that defendant knowingly obtained or exercised control over the victim's vehicle, by deception, and retained possession or control of it for more than twenty-four hours. See § 18–4–409(2)(a), (3)(a), C.R.S.2014.

¶ 46 The consent instruction defendant tendered read as follows:

It is an affirmative defense to the crime of Aggravated Motor Vehicle Theft ... that the victim gave his consent if the consent negates an element of the offense or stops the infliction of harm sought to be prevented by the law defining the offense.

¶ 47 The mistake of fact instruction defendant tendered read as follows:

It is an affirmative defense to the crime of Aggravated Motor Vehicle Theft ... that the defendant engaged in the prohibited conduct under a mistaken belief of fact, if such fact negates the existence of a particular mental state essential to the commission of the crime.

### 2. Applicable Law

¶ 48 An affirmative defense admits "the defendant's commission of the elements of the charged act, but seek[s] to justify, excuse, or mitigate the commission of the act." *People v. Pickering*, 276 P.3d 553, 555 (Colo.2011); *accord People v. Huckleberry*, 768 P.2d 1235, 1238–39 (Colo.1989). In contrast, a "traverse" is a defense which "effectively refute[s] the possibility that the defendant committed the charged act by negating an element of the act." *Pickering*, 276 P.3d at 555.

¶ 49 The distinction between the two types of defenses is important. If the defense is an affirmative defense, it is treated as an additional element of the offense, and the court ordinarily must instruct the jury that the prosecution has the burden of disproving the affirmative defense beyond a reasonable doubt. But if the defense is an elemental traverse, no such instruction need be given, though the jury may consider it in determining whether the prosecution has proved the element implicated by the defense. *Id.; see Huckleberry*, 768 P.2d at 1238–39; *People v. Doubleday*, 2012 COA 141, ¶¶ 24–25, ―― P.3d ――. "If the evi-

dence supports a traverse defense, the prosecution need do no more than prove the element of the offense beyond a reasonable doubt.... By proving the elements, the prosecution necessarily will negate the traverse defense." *Doubleday*, ¶ 25.

¶ 50 Defendant and the People disagree as to whether we should review the district court's rejection of the tendered instructions for an abuse of discretion or de novo. They also disagree about whether defendant preserved the precise arguments he now raises on appeal (which would affect the test we would apply to determine whether any error requires reversal). We need not resolve those disputes because even reviewing the issue de novo, we conclude that the district court did not err.

### 3. Analysis

¶ 51 Though consent and mistake of fact can be affirmative defenses (depending on the elements of the charged crime), they were not affirmative defenses in this case. "Affirmative defenses do not apply where a defendant denies committing the crime." *Doubleday*, ¶ 24. As noted, an affirmative defense concedes commission of the elements of the offense. Defendant did not concede that he committed the elements of aggravated motor vehicle theft. Specifically, he did not concede that he had obtained or exercised control over the vehicle *by deception*, and asserted both consent and mistake of fact to show that he had not deceived the victim. Thus, his consent and mistake of fact defenses were traverses: if accepted by the jury, they would have negated the element of deception. It follows that although defendant was free to argue that the evidence of consent and mistake of fact showed that he had not deceived the victim, he was not entitled to separate instructions on those defenses characterizing them as affirmative defenses which the prosecution was required to disprove beyond a reasonable doubt. *See Pickering*, 276 P.3d at 555; *Huckleberry*, 768 P.2d at 1239.[7]

¶ 52 We acknowledge that the General Assembly has, paradoxically, characterized consent of the victim as an "affirmative defense" if "the consent negatives an element of the offense or precludes the infliction of the harm or evil sought to be prevented by the law defining the offense." § 18-1-505(1), C.R.S.2014; *see People v. Bush*, 948 P.2d 16, 19-20 (Colo.App.1997) (Briggs, J., specially concurring) (opining that where consent and mistake of fact merely negate an element of the crime charged, they are not truly affirmative defenses, notwithstanding section 18-1-505). But even were we to regard consent and mistake of fact as affirmative defenses under the facts of this case, it would not follow that defendant was entitled to separate instructions on those defenses. Where proof of the elements of the charged offense necessarily requires disproof of the issue raised by the affirmative defense, a separate instruction on that defense need not be given. *People v. Walden*, 224 P.3d 369, 378-79 (Colo.App.2009) (the district court did not err in rejecting the defendant's tendered instruction on mistake of fact because the defense merely negated the mental state of the charged offense); *Bush*, 948 P.2d at 18 (same with regard to consent and mistake of fact); *People v. Cruz*, 923 P.2d 311, 312 (Colo.App.1996) (same with regard to consent); *see also Dunton v. People*, 898 P.2d 571, 572-73 (Colo.1995) (the defendant was not entitled to a separate instruction requiring the prosecution to show his awareness of the victim's lack of consent because the conduct prohibited by the statute under which the defendant was charged necessarily negated the existence of the victim's consent). As defendant concedes, his asserted defenses merely would have negated the "by deception" element of the aggravated motor vehicle theft charge.

### III. Conclusion

¶ 53 The judgment is affirmed.

JUDGE MILLER and JUDGE BERGER concur.

---

7. Defendant was certainly entitled to a theory of defense instruction explaining his defenses, but he does not claim any error in that regard.