The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
August 29, 2019

## 2019COA131

**No. 2015CA1898 *People v. West* — Constitutional Law — Sixth Amendment — Right to Counsel — Right to Self-Representation**

In this direct appeal of a defendant's multiple convictions, a division of the court of appeals considers whether a trial court's multiple evidentiary and discovery rulings against the pro se defendant deprived him of his right to self-representation.

The division concludes that the Sixth Amendment's guarantee of the right to self-representation is narrow, pertaining only to the question of whether a defendant knowingly and intelligently waived his right to counsel in favor of proceeding pro se. *See People v. Arguello*, 772 P.2d 87, 93 (Colo. 1989). Accordingly, the constitutional right does not extend to protect a pro se defendant from purported evidentiary or discovery errors made by the trial court.

COLORADO COURT OF APPEALS                               **2019COA131**

Court of Appeals No. 15CA1898
Boulder County District Court No. 14CR1657
Honorable Andrew R. Macdonald, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Timothy West,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE TAUBMAN
Hawthorne and Grove, JJ., concur

Announced August 29, 2019

Philip J. Weiser, Attorney General, Lisa K. Michaels, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Dayna Vise, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Timothy West, appeals the judgment of conviction entered on a jury verdict finding him guilty of sexual assault of a child under fifteen years of age, contributing to the delinquency of a minor, and a class 4 drug felony. As an issue of first impression, West, who represented himself at trial, asks us to consider whether the trial court's evidentiary and discovery rulings deprived him of his right to self-representation. We conclude that they did not.

¶ 2     He also contends that the trial court (1) violated his right to a speedy trial; (2) erred by not releasing the victim's juvenile records to him; (3) allowed improper testimony bolstering the victim's credibility; (4) erred by allowing the prosecution to untimely add counts that contained a variance and trying those counts in the wrong venue; and (5) cumulatively erred. We reject these contentions as well and therefore affirm.

## I. Background

¶ 3     In 2014, the People charged West with, among other things, sexual assault of a child after he admitted to having sex with the underage victim. Disregarding the trial court's advisement, West waived his right to counsel, choosing instead to proceed pro se.

¶ 4      Throughout the course of the trial, the court repeatedly explained the hazards of West representing himself, at times making statements such as "he who represents himself has a fool for a [client]" and "be prepared to live with the consequence of [representing yourself], which is you are not going to have a lot of resources that would be available to you with court-appointed counsel."

¶ 5      West continually asserted his right to a speedy trial. Over West's objection that it would violate his speedy trial rights, the court set his trial for June 22, 2015. West then moved to reset the trial within what he maintained was the statutory speedy trial period, drawing the court's attention to a document he had placed in the mail on December 20, 2014, that purported to notify the court and prosecution of his not guilty plea. The trial court denied his motion. On June 2 and June 12, West again argued that his speedy trial rights had been violated. The court rejected both arguments, stating that the June 22 date was well within his speedy trial period based on the prosecutor's argument that the period began on the date of his original arraignment hearing on January 16, 2015. On June 19, West made one final effort to

dismiss his charges for violation of his statutory and constitutional speedy trial rights. The court denied the motion, ruling that, even if he properly entered his plea on December 20, 2014, June 22 was the first business day after the statutory period expired and, thus, the trial date was within the statutory speedy trial period.

## II. Speedy Trial

¶ 6     West contends that the trial court violated his statutory and constitutional rights to a speedy trial by setting his trial date for June 22, 2015 — more than 180 days after he initially mailed his notice of plea of not guilty on December 20, 2014.[1]  We disagree.

### A. Standard of Review and Preservation

¶ 7     We review de novo the trial court's interpretation of Colorado's speedy trial statute and its analysis of the constitutional right to a speedy trial. *See People v. Nelson*, 2014 COA 165, ¶¶ 17, 25, 360 P.3d 175, 180-81.  However, we review the court's findings of fact for clear error, disregarding them only if the record is devoid of support. *Id.* at ¶ 25, 360 P.3d at 181.

---

[1] West's argument is based on the incorrect premise that the statutory speedy trial period is 180 days. In fact, under section 18-1-405(1), C.R.S. 2018, it is six months.

¶ 8     It is undisputed that West preserved his statutory speedy trial argument.  For purposes of this opinion, we will assume West also preserved his constitutional speedy trial argument.

## B.  Applicable Law

¶ 9     Both Federal and State Constitutions as well as a Colorado statute protect a defendant's right to a speedy trial.  *Id.* at ¶ 22. While the Sixth Amendment to the United States Constitution and article II, section 16 of the Colorado Constitution guarantee the right, the speedy trial statute implements it by prescribing a deadline within which the defendant must be brought to trial after the right attaches.  *Id.* at ¶¶ 21-22, 360 P.3d at 180-81.

¶ 10    The constitutional right to speedy trial attaches when a defendant is formally charged with an offense or arrested and continuously held in custody prior to the filing of formal charges, whichever occurs first.  *Moody v. Corsentino,* 843 P.2d 1355, 1363 (Colo. 1993) (citing *United States v. Marion,* 404 U.S. 307, 320 (1971)); *see also People v. Chavez,* 779 P.2d 375, 376 (Colo. 1989); *People v. Glaser,* 250 P.3d 632, 635 (Colo. App. 2010).

¶ 11    The United States Supreme Court has announced, and Colorado has adopted, a four-factor balancing test to determine

whether a trial court has violated a defendant's constitutional right to a speedy trial. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Chavez*, 779 P.2d at 376. The *Barker* test requires us to weigh (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his or her right to a speedy trial; and (4) prejudice to the defendant. 407 U.S. at 530.

¶ 12　The *Barker* Court described the length of the delay as "a triggering mechanism," requiring the court to first consider whether the length of delay is "presumptively prejudicial." *Id.* Unless the court deems the length prejudicial, it need not analyze the remaining factors. *Id.* at 531. In determining whether the first factor triggers the rest of the analysis, the court may take into consideration the particular circumstances of the case, such as the seriousness and complexity of the charged offense. *Id.*

¶ 13　Colorado's statutory right to a speedy trial imposes a more precise period: six months from the date of the entry of a plea of not guilty. § 18-1-405(1), C.R.S. 2018. The period ends at the commencement of trial. *Id.* While the prosecution and the trial court bear the burden of compliance, the defendant bears the

burden of proving that he or she was denied a speedy trial. *Saiz v. Dist. Court*, 189 Colo. 555, 557-58, 542 P.2d 1293, 1295 (1975).

## C. Analysis

¶ 14      We first address whether, under *Barker*, the trial court violated West's constitutional right to a speedy trial. Thus, we look to the length of the alleged delay to assess its presumptive prejudice. Here, the constitutional right attached at the time of West's arrest, which was eight months and six days before the first day of trial. Our jurisprudence suggests that the length of delay becomes presumptively prejudicial as it approaches one year. *See People v. Sandoval-Candelaria*, 2014 CO 21, ¶ 35, 321 P.3d 487; *Nelson*, ¶ 23, 360 P.3d at 181 (citing *Doggett v. United States*, 505 U.S. 647, 651 n.1 (1992)); *Glaser*, 250 P.3d at 635; *see also People v. Brewster*, 240 P.3d 291, 299 (Colo. App. 2009) (concluding that seven-and-one-half months was not a presumptively prejudicial delay). Accordingly, we conclude that the delay here did not prejudice West and thus we need not consider the remaining factors.

¶ 15      Turning to West's argument that the trial court violated his statutory right to a speedy trial, we agree with the People that, even

if he invoked his right by mailing his plea of not guilty on December 20, 2014, trial commenced on June 22, the first business day after the conclusion of the six-month period. § 2-4-108(2), C.R.S. 2018; *People v. Hampton*, 696 P.2d 765, 771 n.8 (Colo. 1985). Thus, we need not determine which event started the speedy trial clock because, even if we assume that West's mailing of December 20, 2014, did so, the June 22 trial date fell within the statutory period.

### III. Right to Self-Representation

¶ 16     West argues that the trial court, through multiple discovery and evidentiary rulings, deprived him of his fundamental right to self-representation. We disagree.

### A. Standard of Review

¶ 17     Whether a trial court denied a defendant's right to self-representation poses a question of law we review de novo. *People v. Abdu*, 215 P.3d 1265, 1267 (Colo. App. 2009). If we conclude that a trial court denied a defendant's right to self-representation, structural error results, and we must reverse. *See People v. Waller*, 2016 COA 115, ¶ 23, 412 P.3d 866, 872 (stating that structural error, and not harmless error analysis, applies to the denial of the right to self-representation).

## B. Applicable Law

¶ 18    Though the State and Federal Constitutions guarantee the right to self-representation, *see* Colo. Const. art. II. § 16; *Faretta v. California*, 422 U.S. 806, 821 (1975), the predominant right to counsel requires the trial court to ensure that the defendant has knowingly and intelligently relinquished the right to counsel in favor of proceeding pro se.  *See People v. Arguello*, 772 P.2d 87, 93 (Colo. 1989).  Accordingly, the *Arguello* court acknowledged that "[c]ourts must indulge every reasonable presumption against finding a waiver of the fundamental right to counsel."  *Id.*

¶ 19    Thus, when a defendant asserts a violation of his or her right to self-representation, appellate courts generally consider whether the trial court appointed counsel despite the defendant's unequivocal waiver of his or her right to counsel.  *See United States v. McNeal*, 663 F. App'x 732, 736 (10th Cir. 2016) (unpublished) (holding that the trial court did not violate the defendant's right to self-representation when it did not grant him a continuance to prepare his defense); *People v. Johnson*, 2015 COA 54, ¶¶ 15-25, 356 P.3d 1024, 1030-31 (reversing the trial court's judgment based on its denial of the invocation of his right to represent himself);

*Abdu*, 215 P.3d at 1269 (concluding that the trial court did not violate the defendant's right to self-representation when the defendant did not unequivocally assert his right).

## C.  Analysis

¶ 20    A defendant's constitutional right to self-representation proscribes the imposition of unwanted counsel, but it does not insulate the defendant from the pitfalls of a poorly mounted pro se defense.  West submits nine broad allegations of the trial court denying his right to self-representation, but we count at least twenty-four separate instances in which West asserts that the trial court's actions thwarted his right to self-representation:

  (1)  denying him the right to appear pro se at the advisement hearing;

  (2)  appointing the public defender over his objections;

  (3)  giving West only a brief time to read discovery before the preliminary hearing;

  (4)  allowing the prosecutor to violate a discovery deadline;

  (5)  refusing to require the prosecutor to give him a bill of particulars to narrow the timeframe for the offense;

  (6)  providing West with limited access to discovery;

(7) forcing him to choose between preparation of his defense and sleep;

(8) not promptly appointing an investigator;

(9) declining to disclose the victim's address;

(10) allowing the prosecutor to add charges too late for him to be able sufficiently prepare his defense against them;

(11) prohibiting him from calling witnesses to testify about the victim's prior acts of dishonesty;

(12) barring him from recalling the victim as a witness;

(13) disallowing discovery of juvenile documents to attack the victim's motive and credibility;

(14) preventing him from cross-examining the victim about her age, her relationship with her mother, and the alleged abuse;

(15) precluding introduction of alternate suspect evidence;

(16) barring him from eliciting testimony about an alleged hack of his Facebook account;

(17) precluding his access to a police report;

(18) ruling that he could not question the detective about the victim's motive;

(19)  denying him the right to impeach the victim's mother;

(20)  overruling numerous objections he made but sustaining most of the prosecution's objections;

(21)  admitting improper narrative testimony;

(22)  improperly allowing bolstering testimony;

(23)  permitting the prosecution to use his own offer of proof against him; and

(24)  showing bias against him as a pro se defendant through its rulings.

¶ 21    Though some of the arguments above also assert additional constitutional violations — including the rights to a complete defense, due process, a fair trial, confront witnesses against him, and compulsory process — the appeal couches all arguments within the constitutional right to self-representation.

¶ 22    However, West does not cite authority, and we know of none, in which an appellate court has concluded that a trial court's rulings on evidentiary and discovery issues violated the defendant's right to self-representation.

¶ 23    Because the additional aforementioned constitutional arguments are not developed, we do not address them.  *See People*

*v. Diefenderfer*, 784 P.2d 741, 752 (Colo. 1989) ("It is the duty of counsel for appealing parties to inform a reviewing court both as to the specific errors relied upon and as to the grounds, supporting facts and authorities therefor.")

### 1. West's Arguments Do Not Implicate His Right to Self-Representation

¶ 24    West repeatedly alleges violations of his right to self-representation based on the trial court's evidentiary and discovery rulings. However, if the trial court erred or abused its discretion making these rulings, such assertions of error or abuse of discretion, for the most part, could have been made even if West had been represented by counsel.

¶ 25    Moreover, though the oft-recited platitude that "a pro se defense is usually a bad defense," *Abdu*, 215 P.3d at 1268 (quoting *Martinez v. Court of Appeal*, 528 U.S. 152, 161 (2000)), may ring true, the interests of justice did not obligate the trial court to try the case for West, *see Bergerud*, 223 P.3d at 700 (stating that the trial court may, but is not required to, assist a pro se defendant). Nevertheless, the trial court appointed advisory counsel and, at various stages, explained its rulings and the law to West, while at

12

other times it provided him lenient treatment, though it was not required to do so. The court also informed West multiple times that, if he disagreed with a discovery ruling, he could raise the disagreement on appeal.

¶ 26    We conclude that even if the trial court's numerous rulings were erroneous or an abuse of discretion, they did not constitute a violation of West's constitutional right to self-representation. West litigated his case to a jury representing himself, which is precisely what he requested.

### 2.  West's Waiver of His Right to Counsel

¶ 27    However, West raises a single claim that we agree implicates his right to self-representation: the trial court purportedly denied West's request to proceed pro se and appointed a public defender at the advisement hearing. This contention requires us to review West's putative waiver of his right to counsel and the specific language thereof. West initially stated, "At this time, I wish to proceed pro se, but I do not wish to completely waive my right to counsel. I need to think about it." When the court replied that it would appoint a public defender, he vacillated again, stating, "if you do that, then I will be denied the evidence against me, so I must

13

proceed pro se even thought [sic] I would like the assistance of counsel."

¶ 28 The court then explained that it must either appoint counsel or allow him to continue without an attorney. When West stated that he would proceed pro se, he also indicated that he might seek a private attorney. Although West's final statement to the court at the advisement hearing was that he wished "to proceed pro se," we agree with the trial court's implicit determination when it appointed a public defender that the irresoluteness of his statements to the court suggested that his waiver was not unequivocal. *See Abdu*, 215 P.3d at 1268. Thus, until he entered an unequivocal waiver and dismissed his public defender at the next hearing, because he had not yet properly invoked his right to self-representation, the trial court did not err in indulging every reasonable presumption against finding that he had waived his fundamental right to counsel.

## IV. The Victim's Juvenile Record

¶ 29 West contends that the trial court erred by failing to disclose the victim's juvenile record because it contained exculpatory evidence. We disagree.

14

## A. Standard of Review

¶ 30    We review a trial court's ruling on discovery issues, including its decision whether to review juvenile records in camera, for an abuse of discretion. *See People v. Herrera*, 2012 COA 13, ¶ 10, 272 P.3d 1158, 1161 (stating that abuse of discretion is the proper standard of review for a trial court's "decision whether to review social services records in camera"). However, even if the court erred in not disclosing documents, a defendant must show "a reasonable likelihood that the verdict would have been different had the pertinent information been disclosed before trial." *People in Interest of A.D.T.*, 232 P.3d 313, 317 (Colo. App. 2010).

¶ 31    Because the documents at issue are sealed, the People concede — and we agree — that we may conduct an independent review to determine whether the documents were discoverable and, if so, whether prejudice resulted from the court's ruling that the records are not discoverable. *See id.* at 319.

## B. Analysis

¶ 32    The court must weigh the interest of the People in protecting confidential records of a victim against the defendant's interest in disclosure. *See Martinelli v. Dist. Court,* 199 Colo. 163, 171, 612

15

P.2d 1083, 1089 (1980). "If the state has an interest in the confidentiality of certain sensitive information, . . . the court must balance that interest against the defendant's constitutional right to discover favorable evidence." *A.D.T.*, 232 P.3d at 316 (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 57-60 (1987)).

¶ 33    Here, the court issued a protective order after its in camera review, concluding that the documents were "not relevant to the issue that had been raised in this case so far . . . [and, the court did not] think it[] [was] appropriate to release them." After our own in camera review of the juvenile records at issue, we conclude that, even if the records were discoverable, the verdict likely would not have been different had the records been disclosed; thus, we affirm the trial court's ruling on this issue.

## V.  Witness Bolstering

¶ 34    West asserts that some testimony improperly bolstered the victim's credibility. We disagree.

¶ 35    On direct examination, the prosecutor elicited the following testimony from the victim:

> Q. [W]hen you first sat down today, the judge
> asked you about -- to raise your hand and to

> talk about telling the truth today.  Do you
> recall him asking you that?
> A. Yes.
> Q. Okay.  When, um, you came in here before,
> did I talk to you as well about the -- about
> what's the number one rule about testifying?
> A. Yes.
> Q. What's the number one rule?
> A. Tell the truth.
> Q. Okay.  Is that what you have done today
> while you've been here testifying?
> A. Yes.

¶ 36    During cross-examination of the victim's mother, West asked her mother repeatedly whether she had told the victim what to tell law enforcement officials.  Also during redirect examination, the following exchange occurred between the prosecutor and the victim's mother:

> Q. Okay.  Mr. West asked you several times if
> you told [the victim] what she should say to
> Sandie, Detective Jones, that is?
> A. I told [the victim] to tell the truth.

¶ 37    Finally, during a detective's testimony, the prosecutor used the phrase "consistent with" in the following instances:

- asking the detective whether the timing of some text messages between the victim and West was "consistent with"

  (1) the victim's testimony about when she was with West and at a homeless camp, and

17

(2) police contact with the victim and her mother; and

• asking him about events West mentioned in text messages to the victim being "consistent with" other sources of information, including police records and the victim's mother.

## A. Standard of Review

¶ 38 Because West failed to object to the testimony now on appeal, we review for plain error. *Hagos v. People*, 2012 CO 63, ¶ 18, 288 P.3d 116, 120. We discern plain error if the error was so "obvious and substantial" as to "undermine[] the fundamental fairness of the trial itself [and] cast serious doubt on the reliability of the judgment of conviction." *Id.* (quoting *People v. Miller*, 113 P.3d 743, 748-50 (Colo. 2005)). Thus, we reverse only if we conclude that the trial judge should have avoided the error "without benefit of objection." *People v. Ujaama*, 2012 COA 36, ¶ 42, 302 P.3d 296, 304.

## B. Applicable Law

¶ 39 Witnesses may not opine on the truthfulness of another witness on a particular occasion. *Venalonzo v. People*, 2017 CO 9, ¶ 32, 388 P.3d 868, 877; *see Liggett v. People*, 135 P.3d 725, 731 (Colo. 2006) (concluding that the prosecution may not ask a witness to opine on the veracity of another witness's testimony). As the

*Venalonzo* court emphasized, testimony bolstering that of another witness becomes particularly concerning in child sexual assault cases in which the case often turns on the witness's credibility. *Venalonzo*, ¶ 33, 388 P.3d at 877-78. This most frequently occurs in instances of a witness testifying that the victim's report of sexual assault was believable. *See id.*; *see also People v. Wittrein*, 221 P.3d 1076, 1081 (Colo. 2009); *People v. Eppens*, 979 P.2d 14, 18 (Colo. 1999).

## C. Analysis

¶ 40    The mother did not opine on the truthfulness of the victim's testimony; instead, she told the jury that, on multiple occasions, she had told the victim to tell the truth. The present case is unlike *Wittrein*, in which the supreme court determined that a child psychologist's testimony that she could not imagine a child fabricating a story about sexual assault was improper because it was a "generalization about whether children have the sophistication to fabricate allegations of sexual abuse." 221 P.3d at 1082. Nor are the facts here similar to those in *Venalonzo*, where the supreme court concluded that it was improper for the district court to allow the victim's mother to testify that "[the victim] did not

display any signs that she was lying when she reported the incident, that [the victim] was not sophisticated enough to make up a story about the sexual assault, and that [the victim] had no reason to accuse [the defendant] unless the incident had actually occurred." ¶ 39, 388 P.3d at 879.

¶ 41     Nor do the questions asked by the prosecutor, and the testimony provided by the victim's mother, align with those of *Liggett*.  In *Liggett*, the prosecutor asked both the defendant and another witness whether the other was lying or mistaken.  135 P.3d at 728.  The supreme court deemed this type of questioning categorically improper.  *Id.* at 732.

¶ 42     The prosecutor's questioning of the victim about his previous conversation with her merely elicited testimony *from the victim* about the truthfulness of her *own* testimony, which does not constitute bolstering as discussed in *Wittrein* and *Venalonzo*. Moreover, the mother's testimony stated that she had told the victim to tell the truth — not that the victim had told the truth.

¶ 43     Finally, the detective said nothing about the truth of testimony; instead, the detective indicated only that certain statements did not conflict with other statements or evidence.

¶ 44 Given that the unobjected-to testimony here is distinguishable from the bolstering testimony ruled improper in other cases, we discern no error, much less plain error.

## VI. Added Counts

¶ 45 West contends that the trial court erred when, approximately five weeks before trial, it allowed the prosecutor to add counts of contributing to the delinquency of a minor and distribution of marijuana to a minor, both of which occurred in a different district. We conclude that any error was harmless.

## A. Standard of Review and Preservation

¶ 46 The trial court may change the trial's venue "when adequate grounds are presented by the motion of a party . . . or whenever it is necessary to obtain an impartial jury . . . . In the absence of such grounds, however, the propriety of venue is a matter of fact and law . . . ." *People v. Reed*, 132 P.3d 347, 351 (Colo. 2006) (citations omitted). Because the underlying facts are not in dispute, we review de novo. *See People v. Shackley*, 248 P.3d 1204, 1206 (Colo. 2011).

¶ 47    West preserved this argument when, at the preliminary hearing on the two added charges, he asserted that the prosecutor filed the two charges in the wrong judicial district.

## B.  Analysis

¶ 48    "[P]roof of venue is not an element of any offense, and venue need not be proved by the prosecution unless required by the statute defining the offense."  *People v. Perez*, 129 P.3d 1090, 1094 (Colo. App. 2005).  West does not allege prejudice attributable to the venue that substantially affected the outcome of the trial; thus, we discern no grounds on which the trial court could have ordered a change of venue.  § 16-6-101, C.R.S. 2018; *see Keohane v. Wilkerson*, 859 P.2d 291 (Colo. App. 1993), *aff'd*, 882 P.2d 1293 (Colo. 1994).  To the extent that he alleges prejudice arising from any lack of preparation time, the court and prosecutor offered a continuance to allow him additional time to prepare.  Thus, he could have waived his right to a speedy trial in favor of extra trial preparation time, but he made the strategic decision not to do so.

## VII.  Cumulative Error

¶ 49    Because we perceive no error in the trial court's challenged rulings, we conclude that cumulative error did not result.

## VIII. Conclusion

¶ 50    Accordingly, the judgment is affirmed.

JUDGE HAWTHORNE and JUDGE GROVE concur.