24CA1195 Peo v Daniel 02-05-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1195
City and County of Denver District Court No. 11CR2173
Honorable Kandace C. Gerdes, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Ennio Z. Daniel,

Defendant-Appellant.

---

ORDER AFFIRMED

Division V
Opinion by JUDGE LIPINSKY
Welling and Tow, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 5, 2026

---

Philip J. Weiser, Attorney General, Patrick A. Withers, Assistant Solicitor
General and Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-
Appellee

Ennio Z. Daniel, Pro Se

¶ 1    Ennio Z. Daniel appeals the postconviction court's order denying his requests for postconviction DNA testing and appointment of counsel under sections 18-1-411 to -416, C.R.S. 2025, and his claims arising under theories of ineffective assistance of counsel, prosecutorial misconduct, suppression of evidence, and failure to preserve evidence.  We affirm.

## I.    Background

¶ 2    In 2012, a jury convicted Daniel of two counts of at-risk sexual assault — overcome victim's will and one count of second degree kidnapping of a victim of a sex offense.  (The victim was an at-risk individual.)  A reasonable jury could have found, based on the evidence introduced at trial, that Daniel sexually assaulted the victim at several different locations, including in his car.

¶ 3    The evidence introduced at trial included the results of DNA tests conducted on two of six samples taken from the victim's underwear following the assault.  One of the forensic scientists who conducted the tests explained that she selected those two samples because they came from "the most likely area" of the victim's underwear to contain DNA from the perpetrator of a sexual assault.

1

The scientist said the four untested samples were "put in a locked freezer" for possible future testing.

¶ 4     The DNA results for the tested samples showed no traces of Daniel's DNA — or any other foreign DNA — on the victim's underwear.  Notwithstanding the lack of DNA evidence linking him to the assaults, the jury convicted Daniel of the two sexual assault counts.

¶ 5     The trial court sentenced Daniel to three concurrent twenty-four-year sentences in the custody of the Department of Corrections.  Daniel appealed the judgment of conviction, and a division of this court affirmed.  *People v. Daniel*, (Colo. App. No. 13CA0475, July 30, 2015) (not published pursuant to C.A.R. 35(f)) (*Daniel I*).  Daniel filed six postconviction motions and petitions between 2016 and 2022.  All were denied.

¶ 6     In February 2024, Daniel filed a motion (the 2024 motion) asserting that he was entitled to additional DNA testing under sections 18-1-411 to -416 because "[c]onclusive DNA results were not available" before his conviction and DNA testing of the four untested samples would "demonstrate [his] actual innocence" by implicating an alternate suspect.  He also raised other arguments

2

unrelated to the DNA evidence in the 2024 motion, primarily concerning his trial counsel's alleged ineffectiveness. Daniel said that his counsel was ineffective because he "did not present a theory of [an] alternate suspect to the jury" and failed to "investigate the forensic evidence, hire and properly utilize [an] expert witness, [and] interview alibi witnesses." He asked the postconviction court to set an evidentiary hearing, "vacate his convictions and sentences, order DNA testing[,] and assign counsel with expertise in this area[] to articulate a cogent defense." In its order denying the 2024 motion without a hearing or appointing counsel for Daniel, the postconviction court concluded that he had "not met the requirements of section 18-1-413[, C.R.S. 2025]."

¶ 7        Daniel appeals the postconviction court's order.

## II.        Analysis

### A.        Daniel's Request for Additional DNA Testing

#### 1.        Standard of Review and Applicable Law

¶ 8        "Review of a postconviction motion for DNA testing presents a mixed question of fact and law." *People v. Thompson*, 2020 COA 117, ¶ 24, 485 P.3d 566, 571. "We review the postconviction court's factual findings for clear error and the court's legal

3

conclusions de novo." *Id.* "A district court's factual finding is clearly erroneous only if it has no support in the record." *People v. Nelson*, 2014 COA 165, ¶ 17, 360 P.3d 175, 180.

¶ 9     A defendant may apply to the district court in which he was convicted for postconviction DNA testing concerning his conviction and sentence and appointment of counsel. § 18-1-412(1), C.R.S. 2025.  To obtain relief under section 18-1-412, the defendant must include in the application "specific facts sufficient to support a prima facie showing that post-conviction relief is warranted under the criteria set forth in section 18-1-413." § 18-1-412(2).  "If the motion, files, and record of the case show to the satisfaction of the court that the petitioner is not entitled to relief based on the criteria specified in section 18-1-413, the court shall deny the motion without a hearing and without appointment of counsel." § 18-1-412(3).

¶ 10     As relevant to this case, the court is required to order postconviction DNA testing only if it finds "a reasonable probability that the petitioner would not have been convicted *if favorable results had been obtained through DNA testing at the time of the original prosecution.*" § 18-1-413(1)(a) (emphasis added).  (In its

4

order denying the 2024 motion, the postconviction court referred to both the correct (current) version and an earlier version of section 18-1-413. *See* § 18-1-413(1), C.R.S. 2025; Ch. 15, sec. 3, § 18-1-413(1), 2023 Colo. Sess. Laws 45. The court's error is harmless, however, because, as noted below, Daniel is not entitled to postconviction DNA testing under the correct version of the statute. *See infra* Part II.A.2.)

### 2. The Postconviction Court Did Not Err by Denying Daniel's Request for Additional DNA Testing

¶ 11 Daniel argues that additional DNA testing "will demonstrate [his] actual innocence" and may yield results implicating an alternate suspect. According to Daniel, the postconviction court erred by denying his request for additional DNA testing for two reasons:

(1) He asserts he had a "reasonable claim" that DNA testing of the four previously untested samples would "prove[] his innocence" and "produce exculpatory or mitigating evidence."

(2) "Conclusive DNA results were not available" before his conviction "for reasons that constitute justifiable excuse, ineffective assistance of counsel[,] or excusable neglect."

¶ 12 We do not need to review the postconviction court's findings for clear error, however, because Daniel failed to make a "prima facie showing that post-conviction relief is warranted under the criteria set forth in section 18-1-413." § 18-1-412(2).

¶ 13 Daniel did not show a "reasonable probability" that he "would not have been convicted *if favorable results had been obtained through DNA testing at the time of the original prosecution.*" § 18-1-413(1)(a) (emphasis added). The General Assembly's use of "if" immediately before the last clause of section 18-1-413(1)(a) means that a defendant cannot make a prima facie showing under the statute unless the defendant alleges that he did not receive favorable DNA results at the time of the original prosecution. *See People v. Salazar*, 2023 COA 102, ¶ 16, 542 P.3d 1209, 1215 ("Grammatically, 'if' is widely understood to introduce a conditional clause, which is a clause that states a condition necessary 'for the truth or occurrence of the main statement of a sentence.'" (citation omitted)). Under the plain language of the statute, a defendant who

obtained favorable DNA test results at the time he was prosecuted is not entitled to postconviction testing. *See People v. Montoya*, 2025 COA 89, ¶ 45, ___ P.3d ___, ___ (holding that when interpreting a statute, "we look first to the statutory language, giving words and phrases their plain and ordinary meanings"). And Daniel concedes that the DNA tests conducted before his trial were favorable to him. Daniel and the People agree, and the postconviction court found, that the "unrefuted evidence" showed that Daniel's "DNA was not on the victim's clothing" and that the DNA test results were "inconclusive" regarding whether his "DNA was on [the victim's] person." One of the forensic scientists who testified at trial said that the two tested samples came from the "most likely area" of the victim's underwear to contain DNA from the perpetrator of a sexual assault.

¶ 14 Additional test results confirming that Daniel's DNA was not found on the victim's underwear would have no impact on Daniel's effort to obtain a new trial. Admission of the results of new negative DNA tests of portions of the victim's underwear would be cumulative of the evidence presented at trial excluding Daniel as a DNA contributor. *Cf. People v McFee*, 2016 COA 97, ¶ 90, 412 P.3d

848, 865 (holding that at trial, "[w]hen evidence is merely cumulative, any error in its admission is harmless"); *Glustrom v. Colo. Pub. Utils. Comm'n*, 2012 CO 53, ¶ 21, 280 P.3d 662, 667 (holding that it was proper to exclude "substantially identical" testimony as duplicative and unnecessary).

¶ 15    It is also possible that additional DNA testing would reveal the presence of Daniel's DNA on the previously untested samples.

¶ 16    Furthermore, the evidence at trial showed that the results of the tests of the two samples detected "no male" DNA.  Accordingly, it is far from reasonably probable that additional DNA testing of samples of the victim's underwear would establish that a male other than Daniel sexually assaulted the victim.  In any event, the presence of another male's DNA on the victim's underwear would not exculpate Daniel, particularly as other evidence persuaded the jury that Daniel committed the sexual assaults.  *See People v. Clark*, 214 P.3d 531, 537-38 (Colo. App. 2009) (explaining that where DNA is the only direct evidence connecting an accused to the crime, it must be coupled with other evidence to be legally sufficient to sustain a conviction), *aff'd on other grounds*, 232 P.3d 1287 (Colo. 2010); *People v. Elmarr*, 2015 CO 53, ¶ 32, 351 P.3d 431, 439

("The touchstone of relevance . . . is whether the alternate suspect evidence establishes a non-speculative connection or nexus between the alternate suspect and the crime charged. . . . Whether the requisite connection exists requires a case-by-case analysis, taking into account all of the evidence proffered by the defendant to show that the alternate suspect committed the charged crime."); *Commonwealth v. Tyler*, 2020 PA Super 145, 234 A.3d 750, 754 (holding that "the mere absence of a defendant's DNA, by itself" does not demonstrate actual innocence).

¶ 17    Therefore, Daniel fell short of making a prima facie showing that he was entitled to additional DNA testing under section 18-1-413(1)(a).

¶ 18    We need not address the other statutory requirements for establishing entitlement to postconviction DNA testing because the General Assembly's use of "and" in section 18-1-413(1) establishes that a defendant seeking such testing must satisfy each subsection of the statute. "Ordinarily, the use of the word 'and' in a statute is intended to be conjunctive — that is, where a statute connects requirements by means of 'and,' [all] requirements must be met for the operative provision to apply." *Krol v. CF & I Steel*, 2013 COA 32,

¶ 16, 307 P.3d 1116, 1119. Thus, Daniel's failure to make a prima facie showing under section 18-1-413(1)(a) is fatal to his request for additional testing.

¶ 19 For these reasons, we affirm the postconviction court's denial of Daniel's request for additional DNA testing without a hearing and without the appointment of counsel.

### B. Daniel's Additional Claims

### 1. Additional Claims Not Raised in the 2024 Motion

¶ 20 In his opening brief, Daniel also raises several issues unrelated to his request for additional DNA testing that he did not raise in the 2024 motion:

- The trial court erred by "grant[ing] the prosecutor's motion to keep all evidence of [a] sexual relationship" between the victim and an alternate suspect "from the jurors" in violation of Daniel's Sixth Amendment right "to confront the witnesses against him."

- The prosecution "suppress[ed] material exculpatory evidence" and "manufactured incriminating evidence."

- The State failed "to preserve the car evidence" because the police "did not get a warrant to seize and search the

car for forensic evidence" that was "materially exculpatory."

- Defense counsel was ineffective because he failed to object to alleged prosecutorial misconduct.

¶ 21    An appellate court cannot address claims not raised in the motion under review. *See People v. Cali*, 2020 CO 20, ¶ 34, 459 P.3d 516, 522 ("[W]e will not consider issues not raised before the district court in a motion for postconviction relief."); *People v. Salazar*, 964 P.2d 502, 507 (Colo. 1998) (holding that "issues not raised in or decided" by the district court "will not be addressed for the first time on appeal"). *But see* Crim. P. 33(a) (stating that in a motion for a new trial, the party "need not raise all the issues [the party] intends to raise on appeal . . . to preserve them for appellate review"). Although Daniel raised these claims in his previous postconviction motions and petitions, he did not raise them in the 2024 motion. And even if he had raised them in the 2024 motion, they would be barred as successive, as discussed below. Consequently, these contentions are not properly before this court, and we will not address them.

11

## 2. Additional Claims Raised in the 2024 Motion

¶ 22    In the 2024 motion, Daniel asserted that his defense counsel was ineffective because he "did not present a theory of [an] alternate suspect to the jury," and failed to interview an alibi witness, investigate the forensic evidence, hire and properly utilize expert witnesses, and present a cogent defense — specifically an alternate suspect theory.

¶ 23    The People argue, and we agree, that these claims (the additional claims) fail because they are successive.

¶ 24    Crim. P. 35(c) requires a court to deny any claim that "was raised and resolved in a prior appeal or postconviction proceeding on behalf of the same defendant" or "could have been presented in an appeal previously brought or postconviction proceeding previously brought." Crim. P. 35(c)(3)(VI)-(VII).

¶ 25    In his direct appeal, Daniel contended, among other arguments, that the trial court erred by excluding evidence of the victim's prior sexual relationships that implicated an alternate suspect. *See Daniel I*, No. 13CA0475, slip op. at 26-30. Daniel then filed six postconviction motions or petitions between 2016 and 2022. Postconviction courts denied all of them and he

unsuccessfully appealed two of the denials. *See People v. Daniel*, (Colo. App. No. 17CA2377, Oct. 24, 2019) (not published pursuant to C.A.R. 35(e)) (*Daniel II*); *People v. Daniel*, (Colo. App. No. 20CA0949, Sep. 16, 2021) (not published pursuant to C.A.R. 35(e)) (*Daniel III*). (He did not appeal the other four denials.)

¶ 26 Because Daniel unsuccessfully asserted those claims in prior appeals and postconviction proceedings, they are successive and barred under Rule 35(c)(3)(VI). Crim. P. 35(c)(VI)-(VII); *see People v. Taylor*, 2018 COA 175, ¶¶ 9, 11, 446 P.3d 918, 920.

### III.   Disposition

¶ 27 The order is affirmed.

JUDGE WELLING and JUDGE TOW concur.